F. R. HENDERSON *et al.*

*v.*

MILTON HARNESS.

*Opinion filed October 24, 1898—Rehearing denied December 14, 1898.*

1. WILLS—*a restriction against alienation of life estate is void.* The rule which makes a restriction against alienation of an estate in fee void, as repugnant to the estate devised to the first taker, applies also to a life estate, as both estates are absolute, the only difference being with respect to their extent and tenure.

2. SAME—*restriction against voluntary alienation not effective as to an involuntary alienation.* A clause in a will providing for the title to land to vest at once in the remainder-men in case the life tenant, as first taker, permitted it to be sold for taxes or if he sold or encumbered the same, does not effect a restriction against his involuntary alienation.

3. SAME—*estate can be divested only as provided in the will.* An estate for life, having vested in the first taker subject to certain restrictions upon breach of which the remainder is to take effect, cannot be divested, under the will, except upon the happening of a contingency literally in accordance with its terms.

4. SAME—*except through trustee, a life estate cannot be devised so as to prevent sale under execution.* Except through the medium of a trustee, and in the absence of any question of exemption under the statute, land cannot be devised in such a manner that it cannot be sold under execution for the debts of the person given a life estate therein, as, under our statute, a life estate in land is subject to seizure under execution.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was a bill in equity brought by Milton Harness, against the appellants, to construe the will of his father, Isaac Harness, and to set aside certain sales of the lands described in clause 6 of the will, wherein the appellants became the purchasers under executions issued on judgments rendered against the appellee. The cause was heard upon bill, answer, replication and report of the master, and thereupon a decree was rendered by the court in favor of the appellee.

The will of Isaac Harness was probated in the county court of McLean county on February 25, 1895. Clauses 6 and 10 are as follows:

"*Sixth*—I give, devise and bequeath to my son, Milton Harness, during his natural life, the following described real estate, situated in McLean county, Illinois, to-wit: The south-west quarter of section thirty (30), excepting 24.75 acres off of the north end of said quarter section, by this will bequeathed to Caroline Kennedy and the heirs of her body, leaving 220 acres remaining in said quarter section, and the north half of lot three (3) of the north-west quarter of section thirty-one (31), containing 80 acres, all in township twenty-five (25), north, range four (4) east, third principal meridian; also, beginning on the half section line running east and west through the center of section eight (8), in township 25, north, range 4, east, third principal meridian, at the east line of the Lexington and Pleasant Hill road as now laid out and traveled, and running from thence south along the east line of said highway to the south line of said section eight (8); thence east on said section line twenty (20) rods; thence north to the half section line running east and west through the center of said section eight (8); thence west twenty (20) rods to the place of beginning, containing 20 acres more or less. My said son, Milton Harness, to have and to hold the same during his natural life, he to have the full use and occupation of the same if he desires it, provided he shall pay all taxes and assessments levied against said land before sale for taxes, and that he shall not sell nor in any way encumber said realty during his lifetime. After the death of my said son, Milton Harness, it is my will that the real estate in this item of my will mentioned and described shall be equally divided between all the heirs of the body of my said son, Milton Harness, and their legal representatives, in accordance with the statutes of the State of Illinois in relation to descent, share and share alike, to have and to hold the same to

them and to their heirs and assigns forever. In case my son, Milton Harness, during his lifetime, shall permit said real estate to be sold for taxes, or shall sell or in any way encumber the same, that his life estate therein shall terminate, and the heirs of his body, in whom the title to said realty is vested, may take possession of said real estate and use and possess the same as if a life estate to Milton Harness had not been given therein. In case my said son, Milton Harness, shall not occupy or take possession of said real estate, then Almaron J. Moon, of Lexington, Illinois, who is hereby appointed trustee for my son, Milton Harness, shall have full power to control and lease the same to the best advantage of all concerned, and after payment of all taxes, repairs and necessary expense of management, he shall annually pay over the residue of the rents and income from said real estate to my son, Milton Harness, in person, only, and it shall not be paid on any written order or other assignment of his interest in my estate; and at the death of my said son all rents unpaid and accruing shall be equally divided among all the heirs of the body of said Milton Harness."

"*Tenth*—It is my will that no portion of the land in this will bequeathed shall be sold or otherwise disposed of during the lifetime of my child to whom is given a life interest therein; and in the event of the termination of the life estate of either of my said children, otherwise than by death, I direct that the heirs of their respective bodies shall not sell or otherwise dispose of any part of the land in this will bequeathed to them, until after the death of the parent through whom they derived the inheritance."

In 1894 a judgment was rendered against Milton Harness in favor of one Terrell, which judgment was afterward assigned to F. R. Henderson, one of the defendants in this bill. In the same year another judgment in favor of F. Oberkoetter & Sons, the other defendant in this bill, was obtained against the same parties. After the

death of Isaac Harness and probate of his will, executions were sued out on these two judgments and levied on the lands so devised to Milton Harness.   Sales were made under the executions, and F. R. Henderson became the purchaser of a portion of the 300 and odd acres of land under his execution sale, and F. Oberkoetter & Sons became the purchaser of the remainder of the lands under its execution sale.

FRANK R. HENDERSON, and E. E. DONNELLY, (W. E. HUGHES, of counsel,) for appellants.

ROWELL, NEVILLE & LINDLEY, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The primary question to be determined in this case is, whether the interest of Milton Harness in the lands devised to him by his father, Isaac Harness, was such an interest as could be sold under executions upon judgments against Milton Harness rendered before the death of Isaac Harness.   This must be determined by the construction of the will of the latter.   The particular clauses which have reference to the interest of appellee are the sixth and tenth, hereinbefore set forth.   In determining the construction of the will the intention of the testator is not to be sought for in what might possibly have existed in his mind, but must be determined from the instrument itself, which must prevail unless inconsistent with the rules of law, and the construction is to be made from the language of the will.   Reference may be made to surrounding circumstances for the purpose of ascertaining the object of the testator's bounty or the subject of disposition, and for the purpose of placing the court in a position of interpreting the language used from the standpoint of the testator at the time he employed it, but surrounding circumstances cannot be resorted to for

the purpose of including in the will any intention not expressed therein. The language used must be carefully considered in arriving at the testator's intention, and if clear and unambiguous, effect should be given to it in its general and popular sense. A cardinal rule in the construction of a will is to discover the intention of the testator. *Finley* v. *King's Lessees*, 3 Pet. 346; *Bingel* v. *Volz*, 142 Ill. 214.

In the clause containing the devise the testator declares: "I give, devise and bequeath to my son, Milton Harness, during his natural life, the following described real estate, situated in McLean county, Illinois." (Then follows a description of the land devised.) "My said son, Milton Harness, to have and to hold the same during his natural life, he to have full use and occupation of the same if he desires it, provided he shall pay all taxes and assessments levied against the said land before sale for taxes, and that he shall not sell nor in any way encumber said real estate during his lifetime. After the death of my said son, Milton Harness, it is my will that the real estate in this item of my will mentioned and described shall be equally divided between all the heirs of the body of my said son, Milton Harness, and their legal representatives, in accordance with the statutes of the State of Illinois in relation to descent, share and share alike, to have and to hold the same to them and their heirs and assigns forever. In case my said son, Milton Harness, during his lifetime, shall permit said real estate to be sold for taxes, or shall sell or in any way encumber the same, that his life estate therein shall terminate." The ninth clause, referring to Milton Harness and his other children, is as follows: "I have given the use and income from the same during their natural lives, being fully convinced, after long experience and observation, that no better investment can be made than McLean county land, and the limitations and restrictions under which I have placed the same will, in my opinion be

for their best interests in preserving the estates to them severally bequeathed for themselves and their respective children." The tenth clause reads: "It is my will that no portion of the land in this will bequeathed shall be sold or otherwise disposed of during the lifetime of my children to whom is given a life interest therein."

By the sixth clause a life estate was devised and bequeathed to Milton Harness during his natural life if he should occupy or take possession of said real estate. It is apparent from the averments of his bill that he did take possession of the said real estate, and by said sixth clause the life estate fully vested in him. A provision is therein made for a contingency, dependent on the devisee's acts, by the happening of which his life estate might be terminated by the remainder-men, who thereupon could enter into possession of the lands to the same extent as if the life estate had not been given to Milton Harness. That contingency depended on the act of Milton Harness in contravention of the terms of the will, and not on the act of others.

Section 3 of chapter 77 of the Revised Statutes provides as follows: "The term 'real estate,' when used in this act, shall include lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, including estates for the life of the debtor or of another, and estates for years and leasehold estates when the unexpired term exceeds five years." Section 10 of the same act provides: "All and singular the lands, tenements, real estate, goods and chattels  *   *   *  of every person against whom any judgment has been or shall be thereafter obtained in any court of record, for any debt, damages, costs or other sum of money, shall be liable to be sold upon execution, to be issued upon such judgment."

Under the above statute a freehold interest in lands is subject to execution. (*Newman* v. *Willetts*, 52 Ill. 98.) The interest of Milton Harness in this land was a free-

hold estate. It was not an equitable right, but a legal estate. Where there is, by express terms, a grant in fee simple, and an immediate vesting of title with no conditions subsequent or limitation over to defeat the estate, an attempt to prevent consequences of the ownership from attaching thereto cannot avail. In a devise of land in fee simple a condition against alienation is void, because it is repugnant to the estate devised. *Potter* v. *Crouch*, 141 U. S. 315; *McDonough* v. *Murdock*, 15 How. 367; *Jones* v. *Port Huron Engine Co.* 171 Ill. 502, and authorities cited.

The rule is uniform that a restriction by way of condition or devise over, or against alienation of an estate in fee, is void, as repugnant to an estate devised to the first taker, by depriving him during that time of the inherent power of alienation. (*Jones* v. *Port Huron Engine Co. supra.*) Whilst this is the rule with reference to an estate in fee, there is some conflict in the decisions of courts with reference to whether the same rule applies to life estates. Whether an estate is granted by deed or devised in fee simple, or whether, under the same character of instruments, an estate for life is created to vest immediately, depending on no contingency or limitation, the estate is absolute in each case. If an estate in fee simple or an estate for life may be created by deed or devise as an absolute estate, vesting in the first taker without contingency or limitation, there would be no difference in the two estates except as to their extent and tenure, and both would be absolute estates.

Where an estate for life is created to vest without contingency or limitation, a restriction on the power of alienation is repugnant to an estate devised to the first taker, because depriving him, during the time he holds the estate, of the inherent power of alienation. There is no difference in these two estates with reference to this feature and with reference to this power attaching thereto as an inherent right and power. If the power to alienate either a fee simple estate or an estate for life has been

restricted then neither exists as an absolute estate. (2 Jarman on Wills,—5th ed.—538; 1 Perry on Trusts, sec. 386; *Bank* v. *Davis*, 21 Pick. 42; *Berring* v. *Tucker*, 55 Me. 284; *Kaeye's Appeal*, 57 Pa. St. 256; *McCormick Harvester Machine Co.* v. *Gates*, 39 N. W. Rep. 657; *McCleary* v. *Ellis*, 54 Iowa, 311.) The rule would be different where the legal title to the property has been vested in a trustee for the use of the beneficiary under specific conditions. That is the most appropriate, if not the only way, of accomplishing the protection of the subject of a devise from creditors. *Steib* v. *Whitehead*, 111 Ill. 247.

The estate having vested in the first taker under this devise, it cannot be divested except on the contingency happening literally in accordance with the instrument creating the estate of the first taker. Roper on Legacies, 619; *Illinois Land and Loan Co.* v. *Bonner*, 75 Ill. 315.

There is a broad distinction between alienation by the voluntary act of the owner of an interest in land and the involuntary assignment made by compulsion of law. (*Medinah Temple Co.* v. *Currey*, 162 Ill. 441.) The clause of the will by which appellee, during his lifetime, was not to permit such real estate to be sold for taxes or to sell or in any way encumber the same, and providing that if he did his estate therein was terminated, and the heirs of his body, in whom the title was vested as remainder-men, might take possession, use and possess the same as if the life estate had not been given, did not effect a restriction on the power of involuntary alienation, except to the extent of allowing the remainder-men to declare a forfeiture for the voluntary alienation. The limitation made by the devise as a restriction on the power of alienation is to be construed in the same manner as a condition in a lease against assignment, and it is well settled that an assignment by operation of law is not a breach of such a condition. (4 Kent's Com. 124.) The seizure of property under judicial process would not work a forfeiture, neither would a judgment or other encumbrance

*in invitum* violate a covenant against encumbrance or a covenant not to encumber. By placing this estate devised to Milton Harness in the hands of trustees, as in *Steib* v. *Whitehead, supra,* and applying the rents therefrom which should be paid to the appellee, ·the testator could have accomplished the ends which it is insisted by appellee it was the intention to accomplish. The intervention of trustees was not sought by the testator nor used, and no principle of public policy or of *stare decisis* establishes a rule in this State that the testator may, without the intervention of a trustee, vest an estate in fee or for life in the first taker with a restriction thereon repugnant to an estate, and which would prevent alienation of the same or seizure under process of law.

Recognizing and adhering to the fullest extent to the principle announced in *Steib* v. *Whitehead, supra,* we are not disposed to extend the principle there announced to cases not within the rule as there stated. Except by the intervention of trustees an estate cannot be devised for the benefit of the legatee in such a manner that it cannot be seized for the debts of one having a life estate therein, as our statute authorizes the sale of such estate under execution, unless the statute with reference to exemptions applies thereto, which is not involved in this record.

It is unnecessary to refer to that part of the will by which Moon, the trustee, was to have power to control and lease the real estate in the event appellee did not occupy or take possession of the same, as that contingency did not occur.

We are of the opinion that the circuit court erred in entering a decree in favor of appellee on his bill, and that decree is reversed and the cause is remanded.

*Reversed and remanded.*