(No. 13129.—Reversed and remanded.)

Moses W. Randolph *et al.* Appellees, *vs.* Emma Grace Wilkinson *et al.*—(Margaret Elizabeth Dennis *et al.* Appellants.)

*Opinion filed October 23, 1920.*

1. Wills—*when testator does not create a testamentary trust.* Where a testator devises his real property to his children and a grandchild, to be enjoyed by them jointly or severally, as they choose, until the death of the last survivor of them, subject to the payment of a sum to his wife during her life, which sum is made a lien on the land, a provision that the property is to be held in trust for said devisees does not create a testamentary trust, where no duty is imposed upon the devisees, as trustees, in behalf of any-one other than themselves and there is only a general direction to the executors to see that the provisions of the will are executed.

2. Same—*what is necessary to create a testamentary trust.* To create a testamentary trust the testator must adequately indicate his intention by using language sufficient to sever the legal from the equitable estate, and he must with certainty identify the beneficiaries and the property out of which the trust is to take effect.

3. Same—*mere use of the word "trust" does not create a testamentary trust.* The gift of an estate upon condition or charged with some burden, such as the payment of a legacy or charge on the property to another, does not create a trust, and the use of the word "trust" in a will is not conclusive on the question whether or not a trust is created.

4. Same—*intention of testator must be found in his will.* The court is not permitted to seek for the intention of the testator outside the expressed provisions of his will or to add words to the will that will express an intention that the testator has not expressed.

5. Same—*when cross-remainders are created.* Where a testator devises his real property to his children and a grandchild, (naming them,) to be enjoyed by them jointly or severally, as they choose, during their lives and the lives of the survivors of them, with a contingent remainder to take effect twenty years after the death of the last survivor, a cross-remainder will vest in the survivors at the death of each devisee, and the last survivor will have an estate in the entire property for life and twenty years thereafter.

6. Same—*an estate for life and twenty years after is a freehold.* An estate for life and twenty years thereafter is a freehold estate, as livery of seizin was required at the common law to pass such an estate.

7. SAME—*when provision against alienation is void.* Where a testator devises his real property to his children and a grandchild, to be held and enjoyed by them during their lives and the lives of the survivors of them until twenty years after the death of the last survivor, at which time a contingent remainder is to take effect, the devisees have absolute estates for life without contingency or limitation, and a restriction on the power of alienation by them is void as being repugnant to the estates devised.

8. SAME—*when remainder to descendants of devisees is contingent.* Where a testator devises his real property to his children and a grandchild (naming them) for their lives, with cross-remainders to the survivors, a remainder to take effect twenty years after the death of the last survivor of said devisees in favor of their descendants, each descendant or set of descendants to take the ancestor's share *per stirpes,* is contingent, as it cannot be determined what descendants will take until the time of distribution.

9. SAME—*when the rule in Shelley's case does not apply—rule against perpetuities.* The rule in *Shelley's case* does not apply to a devise to the testator's children and a grandchild for their lives and the lives of the survivors of them, with a remainder to their descendants to take effect twenty years after the death of the last survivor of the devisees; nor does such a devise violate the rule against perpetuities.

CARTWRIGHT, C. J., dissenting.

APPEAL from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

JOHN F. PEARL, and RAYBURN H. WILSON, guardians *ad litem,* for appellants.

HERRICK & HERRICK, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Jehu H. Randolph, a resident of DeWitt county, died testate September 19, 1900, seized in fee simple of about 1195 acres of farm land situated in said county. He left surviving him his widow, Margaret J. Randolph, and four children, Mary Alice Sumners, Emma Grace Wilkinson, Charles C. Randolph and Moses W. Randolph, also Edna Robbins, (now intermarried with Robert W. Herrick,) his

grand-daughter, as his only heirs-at-law, all of whom are married. Edna Robbins Herrick has three living children, all minors. Moses W. Randolph has one living child, Mildred R. Dennis, who has two minor children living. Mary Alice Sumners has two living children,—Ivern Sumners Parker, who has one living minor child, and Roscoe R. Sumners, who has living four minor children. Emma Grace Wilkinson has one living child, Claude Dean McDonald, who has no living issue. Charles C. Randolph has one living child, who has no living issue. The widow of the testator, Margaret J. Randolph, died May 27, 1905. The annuity of one dollar per acre created by the testator's will in her favor was fully paid to her before her death by the heirs of the testator. The will of the testator, dated July 29, 1899, was duly probated November 10, 1900, by the probate court of said county, and the material clauses thereof, following the provision for the payment of all debts and funeral expenses, are in these words and figures, to-wit:

"*Second*—I give, devise and bequeath to my beloved wife, Margaret J. Randolph, in lieu of dower and all other statutory right in my estate, all my personal property of every kind and nature whatsoever, notes, accounts, choses in action, money, and all my stock farming utensils, etc., etc., the same to be her sole and separate property, but out of the same she is to, and must, pay all my debts and expenses named and included in item first. I also give, devise unto my beloved wife, Margaret J. Randolph, the use and occupation of lots 1 and 4, in block 5, in the original town or village of Kenney, during her natural life. I also give, devise and bequeath to my beloved wife the further sum of one dollar per acre per year for each and every acre of land named and devised in this will, which sum is made a lien on each tract of land herein devised or of which I may die seized, and my heirs and devisees hereafter are each instructed to pay to her, on request, such sum of one dollar per acre per year or such part of the same as she

may demand. The several sums so devised to my said wife are to be in lieu of dower and all other statutory rights.

"*Third*—All my real estate of which I may die seized, including the lots aforesaid, subject to the life estate of my said wife as aforesaid, I give, devise and bequeath to my children and grandchildren, Mary Alice Randolph, intermarried with A. R. Sumners; Charles C. Randolph; Emma Grace Randolph, intermarried with J. F. Wilkinson; Moses W. Randolph, and my grand-daughter Edna Robbins, sole surviving child of my deceased daughter, Lura J. Randolph, intermarried with F. S. Robbins, the same to be had and held by them subject to the said payment of one dollar per year to my wife during her natural life and in trust for my said heirs and the survivors of them during their natural lives and for twenty years after the death of my last child or grandchild now living, without power to sell, convey or in any way incumber the same or any part thereof, and they are strictly enjoined to keep said realty, and every part thereof, in a good state of repair and cultivation and enjoy the same in severally or jointly, as they may see fit, during the time and on the terms aforesaid. And the end of the twenty years, after the death of my last surviving child or grandchild now living. And at the termination of said twenty years I give, devise all said real estate of which I may die seized to the descendants of my children and grandchildren above named, each to have the share falling by law to its ancestor properly divided amongst his or her children or their descendants, *per stirpes* and not *per capita,* but no child, grandchild or their descendants is to have the right or power to sell, mortgage or in any manner incumber the said realty, or any part thereof, at any time before the expiration of said twenty years, after which the same can be divided and sold as the owners thereof may see fit.

"*Fourth*—I do hereby nominate, constitute and appoint my sons, C. C. Randolph and Moses W. Randolph, and my

son-in-law Alfred R. Sumners, to be the executors of this my last will and testament, hoping and urging them, and each of them, to see that all its provisions are fully and fairly executed and carried out."

November 26, 1918, all the heirs-at-law of the testator, with their respective consorts, joined in a deed to Ralph Parker, thereby conveying their undivided one-fifth interest in and to all said real estate. The grantors also, on November 29, 1918, joined in another deed to Parker conveying an undivided one-fifth interest to said real estate, the deed reciting that it is the intention of the grantors therein to convey the fee simple title to all the interest or estate of the grantors in the reversion in fee in and to said real estate to the grantee, his heirs and assigns, and that it is their intention that the particular estate in said real estate theretofore conveyed to the grantee and the reversion in fee should merge, and that by virtue thereof any and all contingent interests, of any kind or character, in and to said real estate in any of the many descendants of the grantor or their children, or in any person, should be cut off and destroyed. On April 8, 1919, Parker, being then a bachelor, executed a deed to Moses W. Randolph, thereby conveying the undivided one-fifth interest in said land vested in him. Thereafter, April 9, 1919, Moses W. Randolph and Minerva D. Randolph, his wife, filed their bill in the circuit court of said county for partition of all said real estate and for the construction of the will of the testator, based on the foregoing facts. They made the other heirs of the testator and their consorts and their children and grandchildren parties defendant. A guardian *ad litem* was appointed for all the minor defendants, who filed answers to the bill. Adult defendants, except those defaulted, filed answers, and replications were filed to all said answers.

On the hearing the court found from the foregoing facts that by virtue of the conveyances and the will Moses W. Randolph was seized in fee simple of an undivided one-

fifth interest in said premises, and that the contingent remainders as to the undivided one-fifth interest were destroyed by merger, as the fee and the particular estate supporting the contingent remainders were united in the same person. The court further found that Charles C. Randolph, Emma Grace Wilkinson, Mary Alice Sumners and Edna R. Herrick are each seized of an undivided one-fifth interest in said premises, "subject to the contingencies of the contingent remainders being cut off in the event of conveyances being made by them, respectively, for that purpose, but that until such conveyance is made by them" they are merely seized of a life estate in said premises; that there was an attempt to create a trust in the will, but that it failed because indefinite, vague and uncertain and for want of sufficient words to ascertain the object in creating the trust; that the provisions of the will do not violate the rule against perpetuities, and that "the rule in *Shelley's case* operated under the will, * * * in that he created a particular interest with the remainder to the heirs of the tenants of the particular estate." Partition was decreed and ordered to be made in accordance with said finding, and commissioners were appointed, with directions to make such partition. The guardian *ad litem* for the minors, Margaret Elizabeth Dennis, Helen Ruth Dennis, James Robbins Herrick, Martin Randolph Herrick, Josephine Herrick, Mason Sumners Parker, William Kenneth Sumners, Margaret Alice Sumners and Theresa May Sumners, prosecutes this appeal.

The first vital question presented for our decision in this case is whether or not the testator by his last will and testament disposed of his real estate by testamentary trust. A consideration of the entire will and all of its provisions leads us to the conclusion that there was no such testamentary trust created. There is no trust created in favor of the widow and the will does not purport to do so. She was required to pay all of his just debts, including funeral

294—33

expenses and expenses of his last illness, out of the personal property bequeathed to her. The legacy of one dollar per acre in her favor is made a lien on each tract of land devised, and the testator's heirs and devisees are instructed to pay this sum to her on request or such part of the same as she may demand of them. The several devises and legacies to her are to be in lieu of dower and all other statutory rights. The devise in the third clause of the will to his four children and grandchild therein named is to be held by them subject to the charge of one dollar per acre to his widow and in trust for said four children and grandchild, and the survivors of them, during their natural lives and for twenty years after the death of the last child or grandchild aforesaid, without power to sell, convey or in any way incumber the same or any part thereof. They are thereby made trustees for themselves and for no one else, and the only other duty enjoined upon them is to keep the realty, and every part thereof, in a good state of repair and cultivation, and to enjoy the same severally or jointly, as they may see fit, during the period of their tenancy and on the terms aforesaid. The entire title, legal and equitable, is thus clearly vested in the four children and grandchild of the testator, and the survivors of them, as to the particular estate granted to them. The clear meaning of this provision is that they are to have and to hold the lands devised to them in separate parts or jointly, as they may choose, subject to the charge of one dollar per acre, and in trust for themselves, with no duty to be performed other than as above stated. The injunction upon them to keep the land in a good state of cultivation merely amounts to fatherly advice, by which the testator hoped to induce them to make the best and most profitable use of the land for themselves and to transmit it in good condition to their descendants, but he imposed no duty upon them by the will as trustees in behalf of anyone other than themselves.

The fourth clause of the will is equally deficient in language to create a testamentary trust. It merely appoints two of the sons of the testator and one of his sons-in-law to be executors, and then expresses the hope that they, and each of them, will see that all the provisions of his will are fully and fairly executed and carried out and urges them to do so. He does not name them as trustees and assigns no duties to them as such, and it is clear from all the provisions of the will that he did not intend to vest the title in them to any of his property for the purpose of having them carry out any testamentary trust. Their duties appear to be no more than those of ordinary executors, whom he urges to, and hopes they will, see that the provisions of his will are carried out,—that is, that every legatee and devisee gets the portion of the property willed to him and that his debts and other expenses be fully paid. By the express terms of the will the payment of his debts and expenses and the charge of one dollar per acre are not to be made by them as executors, but it is merely their duty to see that the debts are paid as he directs and that the widow gets her one dollar per acre or such part thereof as she may demand of the heirs.

It is essential in the provision and constitution of testamentary trusts that the testator adequately indicate by the terms of his will his intention to create such a trust by using language sufficient to sever the legal from the equitable estate, and he must with certainty identify the beneficiaries and the property out of which the trust is to take effect. Another mode of stating this proposition, according to the many decisions and authorities thereon, is, that three circumstances must concur to make a valid testamentary trust: sufficient words to raise a trust, a definite subject, and a certain or ascertained object. (*Snyder* v. *Snyder,* 280 Ill. 467; 40 Cyc. 1727.) The gift of an estate upon condition or charged with some burden, such as the payment of a legacy or charge on the property to another, does not create

a trust, and the use of the word "trust" in a will is not conclusive on the question whether or not a trust is created. (40 Cyc. 1729, 1730.) Where a testator attempts to create a trust for the benefit of his children and grandchildren for life or longer but makes them their own trustees, the effect is to vest in them the particular estate, where it is also clearly shown by the will that it is the intention of the testator that they are to have the possession and occupancy of the land during the life of the particular estate. (*Streit v. Fay,* 230 Ill. 319; *Wilson v. Harrold,* 288 id. 388.) This doctrine is aptly stated in Perry on Trusts (vol. 1, sec. 13,) in this language: "No person can be both trustee and *cestui que trust* at the same time, for no person can sue a subpœna against himself. Therefore, if an equitable estate and a legal estate meet in the same person the trust or confidence is extinguished, for the equitable estate merges in the legal."

While it may have been the intention of the testator to create by his will a trust, yet it is quite clear that such an intention is not sufficiently expressed by the will itself. We are not permitted to seek for the intention of the testator outside of the expressed provisions of his will or to add words to his will that will express an intention that he himself has not expressed. Every writing must not only show that there is a trust but must also show what the trust is, and its object, before a court can hold that a trust is created. *Marie M. E. Church v. Trinity M. E. Church,* 253 Ill. 21.

By the third clause of his will the testator, subject to the life estate of his wife, devises to his children and grandchild therein named, who are also all his heirs-at-law, all of his real estate, to be had and held by them, subject to the payment of one dollar per acre to the widow, in trust for themselves and the survivors of them during their natural lives and for twenty years after the death of the last survivor of the five. These five heirs and devisees are to

hold this land together in a body or in separate tracts, as they see fit, and by this language of the will it is clear that no joint tenancy is created,—that they are to hold as tenants in common or separate their interests if they desire to do that. There is no contention that a joint tenancy is created. It is also made quite apparent by this clause of the will that the whole estate is to go together by the devise over to the children or descendants of· the five heirs and devisees, and that no fractional part thereof is to descend to their children or descendants until twenty years has expired after the death of the five devisees. Cross-remainders are thereby expressly raised by the provisions of the will, and would be implied if the language of the will did not authorize the same by express language. (*Lombard* v. *Witbeck*, 173 Ill. 396; .*Addicks* v. *Addicks,* 266 id. 349; 40 Ann. Cas. 1916B, and note; *Dana* v. *Murray,* 122 N. Y. ·604.) This is clearly indicated by the language of the will that the particular estate is to be had and held by the heirs and devisees "in trust for my said heirs and the survivors of them during their natural lives and for twenty years after the death of my last child or grandchild now living." The will further provides that at the termination of the twenty years the whole body of the land will go to and be distributed to the children or descendants of such heirs and devisees of the testator.

The particular estate to be held and enjoyed by the children and grandchild of the testator by the third clause is a life estate to each one of them except the survivor of the five, who will hold an estate for life and twenty years. On the first death of the five devisees the four survivors will take the whole of the particular estate by cross-remainder. On the second death among the five the three survivors will take the whole estate until the death of the third, when by cross-remainder it will go to the surviving two. On the death of the fourth devisee the whole estate by cross-remainder goes to the last survivor, who will hold

it until his death and for twenty years after. An estate for life and twenty years is a freehold estate, as under the common law it required livery of seizin to pass such an estate. Estates by inheritance and estates for life are freehold estates, and livery of seizin is required by the common law to pass such estates. (2 Blackstone's Com. 104; *Hull* v. *Ensinger,* 257 Ill. 160.) It will thus be seen that the remainders following the particular estates will be supported at all times by an estate of freehold.

As already shown, the particular estates devised by the will being life estates or greater, and being devised to the devisees with the express intention that they shall actually hold and enjoy the same without being incumbered by a trust or otherwise except by the charge aforesaid, the provision in the will against alienation by such heirs and devisees is void. A subsequent provision in a will restricting the power of alienation is repugnant to the estate devised where such estate is an absolute estate for life or in fee simple, vested in the taker without contingency or limitation, because it deprives the devisee of the inherent power of alienation. This rule of law is now well established by the decisions of this court. *Henderson* v. *Harness,* 176 Ill. 302; *Hunt* v. *Hawes,* 181 id. 343; *Bowen* v. *John,* 201 id. 292; *Davis* v. *Hutchinson,* 282 id. 523; *Gray* v. *Shinn,* 293 id. 573.

The devise over in the latter part of the third clause provides for contingent remainders to the children or descendants of the five heirs and devisees. The meaning of this clause will be readily understood by the use of additional words which clearly do not vary but which would elucidate the meaning of that clause. The words which we think should be added to thus elaborate and explain the meaning of the will we will enclose in parentheses and make the provision read as follows: "And at the termination of said twenty years I give (and) devise all said real estate of which I may die seized to the descendants of my chil-

dren and grandchildren (that is, to the descendants of my four children and grandchild,) above named, each (descendant or set of descendants) to have the share falling (that is, that would descend,) by law to its ancestor properly divided amongst his or her children (that is, among such ancestor's children,) or their descendants, *per stirpes* and not *per capita*, but no child (or) grandchild (of mine) or their descendants is to have the right or power to sell, mortgage or in any manner incumber said realty, or any part thereof, at any time before the expiration of said twenty years, after which the same can be divided and sold as the owners thereof may see fit." The quoted clause of the will is to be read with the interpolated matter within the parentheses as if it were a part of the testator's language and as if the parentheses were omitted, to understand our interpretation of the testator's language actually used by him in said clause.

The clear meaning of the foregoing interpolated clause is that the devise over after the devises of the particular estates is to the descendants of the four children and grandchild of the testator or to their children or their descendants. At the time the testator made his will and at the time of his death his grandchild Edna Robbins was not married. She had no children but the testator contemplated that she would have children, and that some of her children, or all of them, might die before the remainders would vest in possession and leave living issue. It is not clear from the evidence in the record whether all the testator's children had children born to them when the will was made or at the testator's death, but it is a fair inference from the evidence that some of his children did have living children at those times. In any event, the testator also had in mind that some or all of his children's children might die and leave living issue before the remainders vested in possession. By the provisions of the will the remainders could not vest in possession until the death of all the testator's

children and his grandchild and twenty years thereafter. It is not unreasonable to suppose that the vesting of the possession of the remainders would not occur until sixty years or more after the death of the testator, as some one of his heirs might live forty years or more after his death, and forty years or more might intervene between the first and last death among his said five heirs, so he provided by his will that the remainders were to go to said five heirs' children or their descendants after the twenty years had ended. We think that by the provisions of this clause the testator intended to designate the issue of such of the children of his said five heirs as might die during the continuation of the particular estates, leaving issue, as devisees of the remainders. This conclusion will necessarily make the remainders contingent, as it cannot possibly be determined who are to take the remainders, whether children or the issue of children, until the time of distribution shall arrive. Had the testator intended to vest the remainders in the children of his heirs at his death he would certainly have said so in so many words. By making the devise over to his heirs' children or their descendants he evidently meant that his land should go to such of his heirs' children as should be living and to the issue of those who died leaving issue. All of the testator's heirs now have living children, but none of their children have any vested interest in the remainders because it cannot be determined whether they will be living at the period of distribution, which is a condition that must happen to enable them to take. A remainder is contingent if the persons who are to take are not definitely ascertained. Tiedeman on Real Property, sec. 402; 4 Kent's Com. sec. 207.

In *Bates* v. *Gillett,* 132 Ill. 287, this court had under consideration a will very similar in many respects to this one, as it disposed of the remainders after life estates devised to the daughters of the testator. The remainders were devised "to their children or their descendants, giving to

the descendants of each child one share." In discussing that devise we said: "If the words 'to their children or their descendants' were to be regarded as controlling and full effect given to the disjunctive 'or,' it might have the effect to create an alternative devise to the descendants of the daughter other than her children and be held to import a condition which could not be determined until the period of distribution had arrived."· This court did not decide the point upon those words, alone, as those words were accompanied by other provisions which produced the same result. The later words employed by the testator in that case provided that the remainder should go "to their children and descendants." The clause in the will now before us first provides that the remainder is to go "to the descendants of my children and grandchildren," and then later provides, in substance, that it shall go to the children of his said heirs or their descendants equally and *per stirpes*. It also provides clearly that the real estate is ·to be properly divided among the children of his heirs or their descendants at the end of twenty years. In the *Bates case* the provision was that after the death of either of the daughters her share was to be equally divided among her children and their descendants. In that case the conclusion was that the clear intent of the testator was that his real estate should be equally divided among the children and their descendants after the death of the owners of the particular estate, and that he intended the remainder to vest in interest in such issue of the daughters, of whatever degree, that should be in being when the estate vested in possession. For similar reasons we hold in this case that the remainders in this case will not vest in interest until the twenty years expire, and that they will then vest *per stirpes* in such issue of the testator's heirs, of whatever degree, as are living at the end of the twenty years. None but descendants can take, and that term excludes all collaterals and all heirs or next of kin in the ascending line. The descendants of the testator's

heirs to take *per stirpes* are not their descendants or heirs
of their bodies at the time of their death, but their living
issue, of whatever degree, at the period of distribution.
Therefore they are to take contingent remainders as pur-
chasers under the will of the testator, and not otherwise.

There is no devise of the remainder in fee by the tes-
tator's will and partial intestacy resulted. The testator's
heirs, his four children and grandchild, take the remainder
in fee by descent, and will hold it until the vesting of some
one of the contingent remainders created by the will, if
such ever happens, when the reversion vested in the heirs
will open up to let in such contingent remainders. All of
the contingent remainders may be destroyed by merger of -
all the particular estates aforesaid and the fee in the re-
mainder. Such a merger would necessarily take place if
all the particular estates and the remainder in fee were to
be conveyed by the heirs of the testator, devisees of such
particular estates, to some third person. The particular es-
tates being destroyed or merged in the fee the contingent
remainders would be cut off or destroyed for want of a
particular estate of freehold in possession to support such
contingent remainders. *Gray* v. *Shinn, supra.*

By the several deeds recited in the first part of this opin-
ion, appellee Moses W. Randolph became seized of an un-
divided one-fifth interest in all the real estate of which the
testator died seized. There were no conveyances made of
the other undivided four-fifths of the real estate by the
five heirs and devisees of the testator. It cannot now be
determined which one of the four children or grandchild
of the testator shall be the last survivor of them. It may
be Moses W. Randolph or it may be any one of the other
four devisees who will be such survivor. Whoever is the
survivor is entitled to an estate for his life and for twenty
years after his death in such undivided four-fifths. There
are no recitals in the deed to Moses W. Randolph, or in
the deeds to Parker, his grantor, reciting that by such deeds

Moses is to hold or claim no further interest in the undivided four-fifths. It cannot be said that his interest in the undivided four-fifths is entirely canceled by such deeds. Before the deeds in question were made each of the devisees, except the last survivor, had simply a life estate in the lands of the testator, and the survivor had an estate for life and twenty years. Until the death of the first of said devisees each would hold, under the will, an undivided one-fifth of the particular estate. After the first death among them each would hold an undivided one-fourth of the particular estate. After the death of the second the holdings would be undivided thirds. After the death of the third the two survivors would hold undivided halves in the particular estate, and the last survivor of them would be the owner of all of the particular estate during his natural life and for twenty years thereafter. The court therefore erred in finding the interests of the five devisees in the remaining undivided four-fifths, and in holding that four of them (naming them) are entitled each to an undivided one-fifth interest therein. It also erred in holding that the rule in *Shelley's case* operated under the will in question for the reasons already indicated. It properly ruled that the devises over after the particular estate did not violate the rule against perpetuities.

Under the present condition of the record the court would have been warranted in setting off in partition to appellee Moses W. Randolph the undivided one-fifth interest deeded to him and the other undivided four-fifths to all the five devisees aforesaid in a body, properly defining the interests of all five therein. No partition can very well be made of the undivided four-fifths except for the purpose of temporary occupancy by the present tenants. If the object of this suit is to destroy all contingent remainders and to vest the heirs of the testator with the fee simple title thereto, as indicated by the decree of the lower court, it is clear

that further conveyances will have to be made of the undivided four-fifths by all five of the testator's heirs.

For the reasons aforesaid the decree of the circuit court is reversed and the cause is remanded, with directions to render a decree in this case finding the interests of the parties in accordance with the views herein expressed and for further proceedings in partition. The court may grant leave to appellees to amend their bill or to file a supplemental bill, as they shall see fit, and to allow proper answers thereto to be filed.

*Reversed and remanded, with directions.*

Mr. Chief Justice Cartwright, dissenting.