## NICHOLAS STREIT

v.

## CATHERINE S. FAY.

*Opinion filed October 23, 1907—Rehearing denied Dec. 6, 1907.*

· 1. LEASES—*when provision is too indefinite to be a covenant for renewal.* A provision in a lease that the lessee might have the "privilege of five years longer, he paying additional rent on re-valuation now fixed at $500," there being no provision made as to when or how the re-valuation should be determined, is too vague and indefinite to constitute a valid covenant for renewal.

2. WILLS—*effect where testator attempts to create a trust without providing for trustee—repugnancy.* Where a testator attempts to create a trust for the benefit of his son for life but makes the son his own trustee, the effect is to vest in the son a life estate, and a subsequent provision depriving him of the power of alienation is repugnant to the estate devised, and is void.

3. FORCIBLE DETAINER—*a tenancy from year to year cannot be terminated by demand for immediate possession.* A tenancy from year to year cannot be terminated by a demand for immediate possession, but the tenant must be notified to .quit in accordance with the requirements of section 5 of the Landlord and Tenant act.

4. SAME—*what creates a tenancy from year to year.* One who is permitted to hold possession of land for more than a year after the termination of his lease without any new agreement and without failing or refusing to pay the rent, and who does not claim adversely to the landlord, becomes a tenant from year to year.

. 5. SAME—*what does not show that tenant has failed to pay rent.* .The fact that a tenant who had agreed to pay the taxes on the premises as part of the rent introduces in evidence, as part of his defense to a forcible detainer proceeding, a tax deed to the premises made to a third party, does not show that he has not paid rent.

6. SAME—*what is not refusal to pay rent.* Where the ownership· of leased property, after the lessor's death, is involved in reasonable doubt, owing to the terms of his will, a statement by the lessee, when asked to pay rent, that he would do so when he knew the right party to pay it to, is not a refusal to pay the rent, such as makes him a trespasser and subject to dispossession at will.

7. SAME—*mere demand for possession does not raise presumption that rent is unpaid.* A mere demand for possession upon one holding over after the expiration of his lease, which is not based

upon any claim that the tenant has failed to pay the rent due or violated any of the terms of the original lease, does not, in the absence of proof, raise any presumption that the tenant was holding over without paying rent.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; ·the Hon. GEORGE A. DUPUY, Judge, presiding.

This is an action of forcible detainer brought by defendant in error, Catherine S. Fay, against plaintiff in error, Nicholas Streit, April 23, 1898, before a justice of the peace of Cook county, to recover possession of certain property, consisting of two lots in block 3, Frazier's addition to Chicago. George E. Cooke, of Louisville, Ky., was the owner of the premises, and on the 18th day of October, 1890, by ground lease, rented to plaintiff in error one of the lots, to "hold from November 1, 1890, until November 1, 1895, with privilege of five years longer, he paying additional rent on re-valuation now fixed at $500." The consideration named was $30 a year, payable $15 semi-annually on the 1st of May and November of each year during the continuance of the lease, at the office of the lessor at Louisville, Ky. · The lessee also agreed to pay "all water rates, and State and county taxes, that may be laid, charged or assessed on said demised premises pending the existence of this lease." The lease to the second lot, which joined the first one immediately on the south, was for the same consideration and in all its terms and conditions the same as the one· above described, with the exception that it was executed February 1, 1892, and was to run to February 1, 1897. Plaintiff in error went into possession of the premises and retained the same to the time of the bringing of this suit. In 1893 George E. Cooke died leaving a will, which was duly probated at Louisville, Ky. The only part of said will that pertains to the property in controversy is clause 7 and the

codicil hereafter referred to. On April 9, 1898, J. Esten Cooke and wife by quit-claim deed conveyed all interest in said block 3 to defendant in error, the deed being recorded April 14, 1898, and on April 16, 1898, H. Brent Cooke and wife, by similar deed, conveyed all interest in and to the same property to said defendant in error, said deed being recorded April 18, 1898. On April 23, 1898, Thomas Fay, husband of defendant in error, representing her, called on plaintiff in error and asked him for rent. On this subject Fay's testimony, as abstracted, is: "I went to Mr. Streit in the morning and asked him for some rent, and he says, 'I will pay the rent;' he says, 'I will pay the rent when I know the right one to pay it to.' 'Well,' I says, 'Mr. Streit, don't you think from what I have told you we are the right one,— Mrs. Fay is the right one?' He says, 'I don't know.' " The plaintiff in error did not pay the rent at this time, and the same day the defendant in error caused a demand for immediate possession of the premises to be served on him and instituted this suit. On May 5, 1898, the justice gave judgment for possession. The case was appealed to the superior court of Cook county, where a trial was had before the court without a jury and judgment rendered in favor of plaintiff in error, holding that defendant in error was not entitled to the possession of the premises. Defendant in error prosecuted an appeal from that judgment to the Appellate Court, where the judgment of the superior court was reversed and a judgment rendered in the Appellate Court finding the plaintiff in error guilty of unlawfully withholding possession of the premises and adjudging that defendant in error have restitution of said premises. No finding of facts is incorporated in the judgment. A certificate of importance was granted by the Appellate Court, and the case is brought here for review upon a writ of error sued out of this court.

ADLER & LEDERER, for plaintiff in error.

230 — 21

ENOCH J. PRICE, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Three grounds are urged by plaintiff in error as reasons for a reversal of the judgment of the Appellate Court: (1) He was entitled to retain possession by virtue of covenants of renewals in the leases; (2) that defendant in error had no right to the possession unless she acquired title thereto by the conveyances from the Cookes, and it is insisted that their interest in the premises was not alienable, and therefore defendant in error acquired neither title nor right of possession by virtue of said conveyances; (3) that if said covenants were void as covenants for renewal, permitting him to remain in possession for so long a time after the terms mentioned in the lease had expired made him a tenant from year to year, and as such he was entitled to the notice provided for the termination of such tenancies by section 5 of the Landlord and Tenant act.

*First*—It will be observed that the covenants for renewal did not fix the amount of rent to be paid for the extension term, but merely provided that plaintiff in error might have the "privilege of five years longer, he paying additional rent on re-valuation now fixed at $500." No provision was made as to when or how the re-valuation should be determined. The provisions, therefore, for the renewal of the leases were too vague and indefinite to constitute valid covenants for renewal. 1 Taylor on Landlord and Tenant, (8th ed.) sec. 333; 18 Am. & Eng. Ency. of Law, (2d ed.) 686.

*Second*—Clause 7 of the will is of such extreme length that we shall not set it out in full. The following extract from it sufficiently shows the nature of the estate devised to the sons of the testator, defendant in error's grantors. By said clause testator devises "in equal parts to my two sons, H. Brent Cooke and J. Esten Cooke, upon the follow-

ing trusts and with the following limitations, to-wit: The part devised to each of them shall be held by him for his own benefit for the period about to be mentioned, but without any power in him to sell or encumber the same or to anticipate its income or in any way subject same to his debts for and during his natural life, or until a court of competent jurisdiction shall by a judgment hold that his interest in said property, or its use or income, is liable to be subjected to his debts or liable to be sold or encumbered by him or to have its rents and profits anticipated by him, with remainder after such death or judgment to my grandchildren now born or to be hereafter born, per capita and not per stirpes; but in case of the death of any such grandchild, leaving descendants, before the termination of the particular estate, the interest he or she would have taken shall go to his or her descendants. And though such judgment should be appealed from, still it is my will that said beneficial interest of that son against whom such judgment shall be entered shall cease and determine at the date of the judgment appealed from." The codicil provided that if either of the sons should attempt to set aside the will or institute proceedings at law to change it in any way, the interest of such son should cease and go to other persons therein provided.

The clause of the will quoted in part, appointed the two sons trustees of the property devised for their own use and benefit during their natural lives. The language used indicates that the testator intended them to have the possession and occupancy of the lands during their lives, without the right to sell or encumber the same unless a court of competent jurisdiction should hold the property subject to the debts of the life tenant or liable to be sold or encumbered by them, or in case proceedings at law should be instituted by the sons "to change in any way" the will, in either of which events the interest of the sons was to terminate. No trustee having been provided to hold the legal title during the time the testator's sons should have the beneficial inter-

est in the premises, the effect of the devise was to vest in the sons of the testator a life estate, and the attempt to deprive the life tenants of the power of alienation is repugnant to the estate devised, and therefore void. (*Henderson* v. *Harness,* 176 Ill. 302.) In that case it was said (p. 310): "By placing this estate devised to Milton Harness in the hands of trustees, as in *Steib* v. *Whitehead,* 111 Ill. 247, and applying the rents therefrom which should be paid to the appellee, the testator could have accomplished the ends which it is insisted by appellee it was the intention to accomplish. The intervention of trustees was not sought by the testator nor used, and no principle of public policy or of *stare decisis* establishes a rule in this State that the testator may, without the intervention of a trustee, vest an estate in fee or for life in the first taker with a restriction thereon repugnant to an estate, and which would prevent alienation of the same or seizure under process of law."

*Third*—Upon the third proposition above stated we are of opinion the contention of plaintiff in error is correct. Although the covenants for renewal in the leases were not enforcible because of their uncertainty, plaintiff in error was permitted to remain in possession of one of the lots two years and a half, and of the other one year and a half, after the original term in the leases had expired. There is no proof that any rent was due or unpaid at the time the demand for possession was made and the suit instituted. The leases bound plaintiff in error to pay the taxes on the premises, and in event of his failure to do so the same might be paid by the lessor and charged to the lessee and collected in the same manner as rent. In making his defense in the trial court plaintiff in error introduced in evidence a tax deed for said premises issued to a third party, and from this defendant in error argues that the proof shows plaintiff in error had not paid the rent. Such an inference is not warranted. When the agent of defendant in error called upon plaintiff in error he did not claim there was any rent

in arrear, nor is the demand for possession based upon the claim that plaintiff in error had failed to pay rent due or that he had violated any of the terms of the leases under which he was holding over. In the absence of proof to that effect we cannot assume that plaintiff in error had held over without the payment of any rent. The theory of defendant in error in demanding possession and in instituting suit appears to have been, and it is so argued in counsel's brief, that after the expiration of the original term of the leases plaintiff in error was subject to be dispossessed at the will of the landlord. If, as we must presume in the absence of proof to the contrary, plaintiff in error was suffered to remain in possession of one of the lots more than two years and the other more than one year after the expiration of the term mentioned in the leases, during which period the rent was collected from him therefor, he would become a tenant from year to year. In *Hunt* v. *Morton,* 18 Ill. 75, the premises were leased to the tenant in the fall of the year under an agreement that he might remain in possession until the following spring. He remained in possession the year following the fall of his entering upon the premises and raised a crop on the land. The following winter he left the premises in possession of his son, who continued in possession and raised a crop thereon the next year. The court treats the possession of the son "the same as if the father had continued and was still in possession," and says, by Caton, J.: "Without any new agreement, and without objection from the landlord or his agent, the tenant continued his possession for two years and over and cultivated the land in crops for both seasons. This certainly created a tenancy from year to year, if it is possible for such a tenancy to be created without an express agreement to that effect, which I presume will not be controverted." See, also, *Eppstein* v. *Kuhn,* 225 Ill. 115; *Abeel* v. *Radcliff,* 13 Johns. 297; 1 Taylor on Landlord and Tenant, (8th ed.) secs. 55, 56, 57; 4 Kent, 112, 114.

The authorities cited by defendant in error are not in conflict with this rule. In *Cairo and St. Louis Railroad Co.* v. *Wiggins Ferry Co.* 82 Ill. 230, the leasing was for a definite term and after it expired the defendant held over, without, however, the consent of the plaintiff. In *Brown* v. *Keller,* 32 Ill. 151, the leasing was for six months. The party holding over disclaimed holding under the lessor as landlord but claimed adversely to and independent of him. Section 22 of 1 Taylor on Landlord and Tenant lays down the rule that a tenant "who holds over after the expiration of his term without paying rent or otherwise acknowledging a continuance of the tenancy becomes either a trespasser or a tenant, at the option of the landlord." Here there is no evidence that during the long period of time plaintiff in error held over he ever failed or refused to pay rent or that he ever claimed adversely to the owner. What he said when Fay asked him to pay rent was not that he would not pay, but that he would do so when he knew the right party to pay it to. Under the state of defendant in error's title this cannot be said to be an unwarranted precaution on his part or a denial of her right as landlord. It does not appear that plaintiff in error ever claimed from any other source than the original leases. A tenancy from year to year can not be terminated by a demand for immediate possession, but such tenant must be notified to quit in accordance with the requirements of section 5 of chapter 80, Hurd's Statutes of 1905. These requirements not having been complied with by defendant in error she was not entitled to possession, and the judgment of the Appellate Court to the contrary was erroneous.

The judgment of the Appellate Court is therefore reversed and the judgment of the superior court affirmed.

*Judgment reversed.*