(No. 11431.—Judgment reversed.)

JOHN PFIESTER, Plaintiff in Error, *vs.* THE WESTERN UN-
ION TELEGRAPH COMPANY, Defendant in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918*

1. TELEGRAPH COMPANIES—*what evidence is admissible to show
damages for failure to receive telegram.* Where the plaintiff fails
to receive a telegram offering employment because it was misdi-
rected by the telegraph company, the plaintiff may testify whether
or not he would have accepted the terms of the offer, leaving the
jury to say whether his conduct and the circumstances proven are
consistent with such testimony and whether the failure to deliver
the message was the proximate cause of the damage.

2. SAME—*degree of care required in delivery of a telegram.*
Where the nature of a telegram is such that the telegraph company
is bound to anticipate that loss may follow if it is not promptly
delivered it is the duty of the company to use a high degree of skill
and care in promptly delivering the message, and the fact that the
addressee, upon failing to receive an expected message, did not at-
tempt to communicate with the sender cannot be availed of by the
telegraph company to its advantage.

3. SAME—*whether plaintiff has been diligent in reducing dam-
ages is a question for jury.* In an action against a telegraph com-
pany for damages for failure to deliver a telegram it is a question
for the jury to determine, under all the proof, whether the plain-
tiff has been reasonably diligent in reducing his damages.

4. CONTRACTS—*what may be considered in determining period
of employment intended by contract.* While a contract providing
for payment at or for stated intervals may create a presumption
that the hiring was for corresponding intervals, the circumstances
attending the hiring, including the nature of the services and the
customs and usages attending the particular employment, should
be looked· to in determining the length of the employment.

WRIT OF ERROR to the First Branch Appellate Court
for the First District;—heard in that court on appeal from
the Circuit Court of Cook county; the Hon. LOCKWOOD
HONORE, Judge, presiding.

GEORGE P. MERRICK, for plaintiff in error.

WEST & ECKHART, (SAMUEL KRAUS, of counsel,) for
defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, John Pfiester; (hereafter called plaintiff,) recovered a judgment for $2000 in the circuit court of Cook county against defendant in error, the Western Union Telegraph Company, (hereafter called defendant,) for failure to deliver him a certain telegram. On appeal to the Appellate Court for the First District the judgment was reversed without remanding, and the cause is brought to this court by writ of *certiorari.*

Plaintiff was a professional base ball player and for several years was in the employ of the Chicago National League Ball Club. On May 3, 1912, said club notified the plaintiff by letter that his services were no longer required by that club and that he had been released to the Milwaukee club of the American Association, and directing him to report to said club at once for duty. Upon receipt of this information plaintiff went to the Chicago office of defendant company and wired the Milwaukee club as follows:

"CHICAGO, ILL., *May 3, 1912.*
"*Mr. H. Duffy, Ball Park, Milwaukee, Wis.*
"Will pitch for you at three thousand per season.
JACK PFIESTER,
*4525 Washington Blvd., Chicago, Ill.*"

The Milwaukee club on the same day replied as follows:

"MILWAUKEE, WIS., *May 3, 1912.*
"*Jack Pfiester, 4525 Washington Blvd., Chicago, Ill.*
"Will give you three hundred per month.    HUGH DUFFY."

In transmitting the latter message to Chicago defendant erroneously gave plaintiff's address as 4526 Washington boulevard, and because of this error the message was not delivered. On May 14, 1912, plaintiff called at defendant's Chicago office and inquired regarding a telegram from the Milwaukee club, and was told the Milwaukee club had sent him a telegram and that he might see a copy of the same at defendant's Cincinnati office. It does not appear that plaintiff was then informed of the contents of such

message nor why the telegram was sent to the defendant's Cincinnati office. On the following day, May 15, 1912, the plaintiff went to Cincinnati, called at defendant's office at that place and saw a copy of the telegram the Milwaukee club had sent him on the third. Plaintiff while in Cincinnati also had an interview with the president of the National Base Ball Commission, who had his offices in that city. Some time in June, following, plaintiff went to see the Milwaukee club and reported for service, but was told other arrangements had been made and that plaintiff's services were not needed. July 6, 1912, plaintiff received his unconditional release from the Chicago National League Club and thereafter made several unsuccessful efforts to secure employment with other professional ball clubs. Plaintiff's declaration alleged that had he received the telegram sent by the Milwaukee club he would have accepted the terms therein contained, and that the failure of defendant company to deliver said message caused him to lose $1800 for the playing season of 1912 which he would have received from the Milwaukee club, and also that he suffered from loss of practice and from injury to his reputation for being idle during the 1912 season.

On the trial plaintiff was permitted to testify, over objection, that he would have accepted the terms offered by the Milwaukee club had he received the message. This evidence, it is insisted, was inadmissible, being too speculative and conjectural, and was but plaintiff's conclusion based upon a condition which did not exist at the time the message should have been delivered and was arrived at in the light of events which had subsequently transpired. Plaintiff's offer by telegram to work for the Milwaukee club for $3000 for the 1912 season was not accepted. A counter-proposition or offer was made plaintiff the same day to pay him $300 per month. This offer by telegraph never reached plaintiff, hence was not accepted, to thus consummate a contract. Of course, if plaintiff would not have accepted the

terms offered in this message he suffered no loss in its not having been delivered. If he would have accepted its terms then the failure to deliver the message occasioned loss to plaintiff. This court has never directly passed upon the admissibility of evidence of this character, and the decisions of courts of other States are conflicting on the question. The courts of Indiana, Kentucky, West Virginia, Georgia and some other States have ruled against the admissibility of such testimony, while a less number of courts have ruled to the contrary. Under the particular facts involved in some, at least, of the cases where the admissibility of the testimony has been ruled against we would not disagree with the decisions, but we cannot accept them as laying down a rule of evidence to be applied in this case. Plaintiff, alone, knew whether he would have accepted the offer of the Milwaukee club had he received it. Certainly his testifying he would have done so would not be conclusive if his acts and conduct contradicted his statement. We are unable to see why it was not competent for plaintiff to testify whether he would have accepted the offer at the time it was made. How, otherwise, under the state of facts here involved, could a plaintiff make a case for the recovery of damages? If plaintiff would have accepted the offer made by the Milwaukee club he clearly sustained damages.

Defendant insists when plaintiff did not receive a reply to his message he should have sent another one or written a letter or have gone to Milwaukee to see about his employment. While it is true he might have done any one or all of these things, we are not impressed that his failure to do so can be used by the defendant to its advantage. Defendant accepted the message for delivery to plaintiff, and it was its duty to use a high degree of skill and care in promptly delivering it to him. The nature of the message was such that it was bound to anticipate that loss might follow if it were not promptly delivered. These propositions are not disputed. Whether loss followed the

failure to deliver the message depended upon whether the offer of $300 per month would have been accepted by plaintiff. What he did after receiving no answer to his message and where he went was proven, and was not believed by the jury and trial court to have contradicted his testimony that he would have accepted the Milwaukee club's offer or there would not have been a verdict and judgment in his favor.

In *Providence-Washington Ins. Co. v. Western Union Telegraph Co.* 247 Ill. 84, the defendant company failed to deliver a message to a local fire insurance agent ordering the cancellation of a policy of insurance. The insured property was destroyed by fire before the policy could be canceled upon orders sent the local agent by mail and the telegraph company was held liable. The opinion does not discuss what the action of the local agent might have been had he received the message, nor does it appear whether or not he testified. Of course, if the agent would not have obeyed the order and canceled the policy then the failure of the company to deliver the message was not the proximate cause of the loss to the insurance company. It was therefore necessary in that case, as here, to allege and prove that had the message been received it would have been acted upon, and how. That could only be known by the addressee, who certainly should be allowed to testify what his conduct would have been. That the question of agency was involved in the insurance company case we do not think distinguishes it from the instant case with reference to the admission of testimony.

In the case of *Western Union Telegraph Co. v. Sights,* 34 Okla. 461, (Ann. Cas. 1914C, 204,) damages were recovered by the sender of a telegram for failure to deliver a message offering to sell cattle at a price stated. It was alleged the addressee would have purchased the cattle had he received the message. It was there urged, as here, that the court erred in permitting the sendee to testify that had

he received the message he would have purchased the cattle. The court said: "It is manifest that if the sendee would have refused to purchase the cattle had he received the message the plaintiffs would not have been injured by its non-delivery, and it seems equally manifest that if the sendee would have purchased the cattle at the price stated this would be material evidence as tending to show that the plaintiffs were damaged, and we can imagine no better way of proving this fact than by the testimony of the sendee."

In *Hasbrouck* v. *Western Union Telegraph Co.* 107 Iowa, 160, (70 Am. St. Rep. 181,) it was held in an action against a telegraph company for damages resulting from a contract entered into in reliance upon an erroneously transmitted telegram, that plaintiff was properly allowed to testify that the contract in question would not have been entered into except for such error on the part of defendant.

In *Willis* v. *Western Union Telegraph Co.* 69 S. C. 531, (104 Am. St. Rep. 828,) it was held that the addressee of a telegram may, under proper pleadings, testify whether, if it had been received, he would have replied to it and what such reply would have been. See, also, *Postal Telegraph-Cable Co. of Texas* v. *Talerico,* (Tex.) 136 S. W. Rep. 575; *Larsen* v. *Postal Telegraph-Cable Co.* 150 Iowa, 748.

We are of opinion the testimony of plaintiff, as addressee of the message, as to whether or not he would have accepted the terms of employment mentioned in the telegram, was admissible. It was then for the jury to say, under all the proof in the case, whether or not plaintiff would have accepted the employment and whether the failure to deliver the message was the proximate cause of the damage. *Nall* v. *Taylor,* 247 Ill. 580; *McPeek* v. *Western Union Telegraph Co.* 107 Iowa, 356; 43 L. R. A. 214.

Defendant insists compensatory damages cannot here be recovered, because, had the message been delivered and its terms accepted, it would have but amounted to a contract at will. With this we cannot agree. The telegram sent by

plaintiff to the Milwaukee club offered his services for the 1912 season for $3000. Had the terms therein contained been accepted it could not be said the contract would be one at will. It would have been for the entire 1912 season. The message of the Milwaukee club to plaintiff did not expressly say its offer was $300 per month for the season, but both that club and the plaintiff knew the custom and practice of contracting for the playing season of some six months, and it will be implied, in the absence of an expressed contrary intention, that it contracted with reference to such known custom and usage. That this is true is supported by the proof that the Milwaukee club, when it contracted for the release of plaintiff from the Chicago club, agreed to pay said club for plaintiff's release $500 when he signed a contract with the Milwaukee club and $1500 on August 1 following. While a contract providing for payment at or for stated intervals may create a presumption that the hiring was for corresponding intervals, the circumstances attending the hiring, including the nature of the services and the customs and usages attending the particular employment, should be looked to in determining the length of the employment. (*Smith* v. *Theobold*, 86 Ky. 141.) Applying this rule to the facts in this case, we think the contract, if entered into had the telegram been received and its terms accepted, would have been for the base ball season of 1912.

Defendant further insists there can be no recovery in this case because plaintiff failed to exercise ordinary care and prudence to make his injury or loss as small as possible. We find no warrant in the record for disturbing the verdict and judgment of the trial court on that ground. It was a question for the jury to determine, under all the proof, whether plaintiff was reasonably diligent in his negotiations with the Milwaukee club and in his efforts to secure employment with other clubs under all the circumstances.

The judgment of the Appellate Court is reversed and the judgment of the trial court affirmed.

*Judgment reversed.*