**UNITED STATES of America,**
**Appellant,**

v.

**MYRA FOUNDATION, Appellee.**

No. 18614.

United States Court of Appeals
Eighth Circuit.

Aug. 18, 1967.

⊛837

Stephen H. Paley, Atty., Tax Div., Dept. of Justice, Washington, D. C., made argument for appellant; Richard C. Pugh, Acting Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C. and John O. Garaas, U. S. Atty., and Richard V. Boulger, Asst. U. S. Atty., Fargo, N. D., with him on the brief, for appellant.

Robert Vaaler, of Stokes, Vaaler, Gillig & Warcup, Grand Forks, N. D., made argument and filed brief for appellee.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The Government has taken this timely appeal from final judgment of the District Court awarding taxpayer Myra Foundation judgment for $6955.33, the amount of a deficiency in 1958 income taxes, penalty and interest assessed against and paid by the taxpayer. Timely claim for refund was filed and denied. Jurisdiction exists in the trial court under 28 U.S.C.A. § 1340. Our jurisdiction is invoked under 28 U.S.C.A. § 1292.

It is undisputed that Myra Foundation is a North Dakota nonprofit corporation organized and operated exclusively for religious, charitable and educational purposes. Taxpayer has been recognized by the Commissioner as a charitable organization exempt from federal income tax under the provisions of 26 U.S.C.A. § 501(c).

Myra Foundation owns 5700 acres of North Dakota farm land. With respect to the use of such land, the trial court, after hearing the case without a jury, found:

"That in the year, 1958, farm lands owned by the Myra Foundation were rented by Plaintiff to ten separate tenants pursuant to lease agreements, either written or oral; the Plaintiff as landlord received, as rent for said property for said year, pursuant to the lease, 50 per cent of the crops and produce grown thereon in the case of nine tracts so leased and one-third of the crops and produce grown in the case of one lease; that such leases are in common usage in the area and are commonly entered into by landlord and tenant for the rental of farm lands; that the Myra Foundation did not participate or engage in the farming business either individually or as a joint operation with others; that the crops or produce received by the Plaintiff in the year, 1958, constituted rents from real property within the meaning of Section 512(b) (3) of the Internal Revenue Code.

"That the Plaintiff did not receive unrelated business taxable income in the year, 1958, as defined by Section 512(a) of Title 26 of the United States Code."

The primary issue presented by this appeal is whether the share of the crop received by the Myra Foundation during the year 1958 under the farm operation arrangements with respect to its farm land constitutes unrelated business income taxable under 26 U.S.C.A. §§ 511–513.

More specifically, the issue is whether the share crop income received consti-

tutes rent excludable under 26 U.S.C.A. § 512(b). Such section reads in pertinent part:

"(b) *Exceptions, additions, and limitations.*—The exceptions, additions, and limitations applicable in determining unrelated business taxable income are the following:

\* \* \* \* \* \*

"(3) There shall be excluded all rents from real property (including personal property leased with the real property), and all deductions directly connected with such rents."

The trial court resolved the critical issue in favor of the taxpayer, holding that the income received by the taxpayer from its farms constituted rent within the meaning of such term as used in § 512 (b) (3) and hence, that the income falls within the statutory rent exclusion and is not taxable as unrelated business income. We affirm.

▮ We agree with the Government's contention that the exercise of its constitutional power to tax income is not controlled or limited by state law and that "it is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation." Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199. See Watson v. Commissioner of Int. Rev., 345 U.S. 544, 551, 73 S.Ct. 848, 97 L.Ed. 1232. Thus, if the statute here controlling defines rent more narrowly than state law, unquestionably the federal definition will control.

▮▮ We find nothing in the pertinent statute, related statutes or the legislative history which manifests any Congressional intent to give the word "rent" as used in § 512(b) (3) any restricted or unusual meaning. It appears to us that the § 512(b) (3) exclusion applies to all rents from any property. " 'Generally speaking, the language in the Revenue Act, just as in any statute, is to be given

its ordinary meaning, \* \* \* ' " Commissioner of Int. Revenue v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L. Ed.2d 75, and cases there cited; Malat v. Riddell, 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102. See 1 Mertens Law of Federal Income Taxation, § 3.14.

▮ The broad definition of gross income found in 26 U.S.C.A. § 61 includes, "(5) Rents." No definition of rent is found anywhere in the Internal Revenue Code. Thus, it would appear that Congress by the use of such word intended to accord the word "rent" its usual, ordinary and well-understood meaning.

The regulations provide that all individuals, partnerships or corporations that cultivate, operate or manage farms for profit either as owners or tenants are designated as farmers, and further provide, inter alia, "Crop shares (whether or not considered rent under State law) shall be included in gross income as of the year in which the crop shares are reduced to money or the equivalent of money." 26 C.F.R. § 1.61–4. "Gross income includes rentals received or accrued for the occupancy of real estate, \* \* \*." 26 C.F.R. § 1.61–8. "Whether a particular item of income falls within any of the exceptions, additions, and limitations provided in section 512(b) shall be determined by all the facts and circumstances of each case. For example, if a payment termed 'rent' by the parties is in fact a return of profits by a person operating the property for the benefit of the tax-exempt organization or is a share of the profits retained by such organization as a partner or a joint venturer, such payment is not within the exemption for rent." 26 C.F.R. § 1.512 (b)–1.

The Government concedes it has found no case dealing directly with the issue here presented of whether or not crop sharing farm contracts such as those here involved produce rents from real property. Absent controlling federal law defining rent, we deem it appropriate to examine state cases to ascertain the ordinary meaning to be given to the word "rent." In Whithed v. St. Anthony &

Dakota Elevator Co., 9 N.D. 224, 83 N.W. 238, 240, 50 L.R.A. 254, rent is defined as follows: "[T]he word 'rent' is comprehensive, and embraces the 'compensation, either in money, provisions, chattels, or labor received by the owner of soil from the occupant thereof.'"

■ It is possible, of course, for a land owner and a farm operator to enter into any type of contract they choose. The contract can create a landlord-tenant relationship, an employer-employee relationship, a partnership or a joint venture. In Minneapolis Iron Store Co. v. Branum, 36 N.D. 355, 162 N.W. 543, 553, L.R.A.1917E 298, the court holds:

"That instruments known as cropper's contracts or farm leases, like all other contracts, must be construed so as to carry into effect the actual intention of the parties thereto. One provision cannot be singled out and given an effect nullifying other provisions, but the contract must be construed as a whole, and the real intention of the parties as thus gathered must control."

Fifty-two C.J.S. Landlord and Tenant § 798 at p. 724 states: "The general rule is that an ordinary contract between the owner of the land and persons who are to cultivate the land on shares does not constitute them partners in the transaction, in the absence of stipulations or evidence clearly manifesting a contrary purpose; nor does it create a joint adventure." Supporting cases are cited in the footnotes. To like effect, see 21 Am.Jur. 2d, Crops §§ 37–40.

The Iowa court, in speaking of a share crop rental arrangement in Duff v. Baker, 78 Iowa 642, 43 N.W. 463, 464, observes: "If an agreement of that kind were to be held by this court to be a partnership it would be a great surprise to thousands of landlords and tenants in this state; * * *"

The written contract under which each farm was being operated contains provisions usually found in leases and makes frequent use of the words "lease" and "rent". The contract as a whole appears to clearly reflect the intention of the par-

ties to create a landlord-tenant relationship.

The Government's reliance upon Social Security cases such as Celebrezze v. Benson, 8 Cir., 314 F.2d 219, and Celebrezze v. Miller, 5 Cir., 333 F.2d 29, is misplaced. Such cases deal with net earnings from self-employment which will qualify for Social Security coverage. 42 U.S.C.A. § 411(a) (1), excludes rentals from qualifying as net earnings from self-employment but then goes on to say that the exclusion does not apply to any income from the use of land if:

"(A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land, and that there shall be material participation by the owner or tenant in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is material participation by the owner or tenant with respect to any such agricultural or horticultural commodity; * * *"

■ The statute just referred to specifically provides that the rent exclusion shall not apply under the circumstances set out. Such is in accord with the policy of broadening Social Security coverage. We find nothing in the Social Security statutes or the cases interpreting them that indicates any legislative intent to restrict or change the meaning of rent in ordinary income tax situations. The result of the Social Security cases flows from the exception to the rent exclusion spelled out in the statute. Section 411(a) does not go to the extent of narrowing the definition of rent for general purposes but only qualifies income which would ordinarily be considered rent as earnings from self-employment for Social Security purposes under the conditions set forth in the statute. Thus, the fact that the landlord's activities here might afford a basis for an individual landlord to treat a portion of his income

from a farm which would normally be considered rent as self-employment income has no significance upon the issue of whether the income derived from the farm operation constitutes ordinary income in the form of rent for tax purposes.

The Government, as a basis for urging that the contracts are something other than a lease, states that the landlord by furnishing the seed and one-half the cost of fertilizer, weed spray, and combining, has engaged in farming as a partner or joint adventurer. The evidence shows that such arrangements are not uncommon in share farm leases. Modern agricultural technology establishes that the use of improved seed, fertilizer and weed spray will under ordinary conditions materially increase the yield and thus increase the net return of both landlord and tenant substantially more than the amount invested by each in such items. There is nothing unusual about providing in leases for the division of the cost of such items which increase the return of both the landlord and the tenant.

Taxpayer employed a farm manager. Such manager also served other clients and devoted not more than 10% of his time to supervision of the taxpayer's leases. The manager was knowledgeable by training and experience in agricultural problems and among other things advised the tenants as to crops to be planted, seed, weed spray and fertilizer to be used and other matters. Decisions were made by mutual agreement between the tenant and the farm manager. The tenant furnished all the machinery and the labor in the production of crops and generally made decisions as to the day-to-day operation of the farm. It is not unusual for farm owners to employ farm managers to supervise and protect their interests. The employment of a farm manager by taxpayer on the record facts before us does not defeat the landlord-tenant relationship.

The Court's determination that the relationship between the taxpayer and those operating its farms is that of landlord and tenant and the income derived from such operation is rent is supported by substantial evidence and is not induced by any erroneous view of the law. As rent, the income falls within the § 512(b) (3) exception from treatment as unrelated business income.

The judgment is affirmed.