*In re* ESTATE OF JAMES F. FLOWERS, Deceased.—(ELSIE M. FLOWERS, Ex'r of the Estate of James F. Flowers, Deceased, Petitioner-Appellant, *v.* ROBERT H. MEHRHOFF, Respondent-Appellee.)

Fourth District   No. 16430

Opinion filed April 24, 1981.

CRAVEN, J., dissenting.

James W. Day, of Carrollton, for appellant.

Robert H. Mehrhoff, of Carrollton, *pro se*.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal raises a question as to the nature of the relationship between an owner of farm land and the person doing the actual cultivation of it. Is that relationship one of landlord-tenant or is it a

contract for personal services? Such a determination is one of fact, but we find the record in this case inadequate for such a finding and hence reverse.

James Flowers cultivated 125 acres belonging to respondent Robert Mehrhoff. Flowers died on April 29, 1980. His personal representative petitioned the circuit court of Greene County for leave to complete the cultivation and harvest of the 125 acres. It appeared that about one-half of the acreage was to be planted in soybeans and the other one-half had been planted in corn at the time of Flowers' death. While the corn had been planted, only the preliminary disking had been done for the soybeans.

The trial court entered an order permitting Flowers' personal representative to complete work on the corn crop, but gave respondent immediate possession of the soybean portion. The court further ordered respondent to pay the estate the value of the disking. Petitioner, Flowers' personal representative, appeals that part of the order concerning the soybeans. Her contention is that the arrangement was one of landlord-tenant and that Flowers' leasehold could be terminated only by giving the statutorily required four months' notice. (Ill. Rev. Stat. 1979, ch. 80, par. 5.1.) Respondent argues that no landlord-tenant relationship existed, calling it a "crop-share arrangement," which, as we understand his argument, equates with a personal service contract which terminated on Flowers' death. The petitioner argues further that even if the relationship be construed as a personal service contract, the four months' notice provision of the statute applies to it in the same manner as to a landlord-tenant.

Section 5.1 of "An act to revise the law in relation to landlord and tenant" reads:

> "In order to terminate tenancies from year to year on farm lands, occupied on a crop share, livestock share, cash rent or other rental basis, the notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting. Such notice may not be waived in a verbal lease." (Ill. Rev. Stat. 1979, ch. 80, par. 5.1.)

It is admitted that no such notice was ever served in this case until May 1980, following Flowers' death.

■■ Illinois has long recognized that crop-share arrangements do not necessarily create landlord-tenant relationships. The supreme court so stated in the early case of *Alwood v. Ruckman* (1859), 21 Ill. 200, stating that the intention of the parties controls and that the agreement may create either a landlord-tenant relationship or a tenancy in common in the crop. In *Alwood* the court appeared impressed with the fact of possession. When the farmer lived on the premises, the assumption was that of tenant; when the owner lived on the premises but had another cultivate the crop,

the assumption was that of employee. Compare *Chase v. McDonnell* (1860), 24 Ill. 237; *Dixon v. Niccolls* (1866), 39 Ill. 372.

In *Wheeler v. Sanitary District* (1915), 270 Ill. 461, 469-70, 110 N.E. 605, the court said:

> "Where one leases land to another for the purpose of raising a single crop, of which the land owner is to have one part for his rent and the cultivator the remaining part for his pay, the question whether the relation of landlord and tenant exists or the two are tenants in common depends on the intention of the parties, which is usually to be inferred from the circumstances, of which the possession is, in general, determining. Where it is doubtful whether the possession and control are exclusive in the tenant or joint in the owner and cultivator, and whether the right of entry continues for the year or only until the crop is removed, the inclination is to find in favor of the latter conclusion. (*Alwood.*)"

Other courts have recognized the same principles expressed by the Illinois cases.

> "It is possible, of course, for a land owner and a farm operator to enter into any type of contract they choose. The contract can create a landlord-tenant relationship, an employer-employee relationship, a partnership or a joint venture." *United States v. Myra Foundation* (8th Cir. 1967), 382 F.2d 107, 110.

In *Dopheide v. Schoeppner* (Iowa 1968), 163 N.W.2d 360, the court said that intent is often implied rather than expressed. It listed the following elements to consider in assessing intent: (1) Who lives on the premises, (2) who controls the buildings, (3) who has the right to possession, (4) who furnishes supplies, (5) who divides the crop, (6) the length of the agreement, (7) the extent of the land owner's control over the operation, and (8) the words used in the agreement, if written. 163 N.W.2d 360, 362-63.

■■ In the instant case if the relationship was that of landlord-tenant, the leasehold continued since no notice was served under the statute and the estate must be permitted to continue as tenant until the end of the term. On the other hand, if the intention of the parties was to create one of employment, or partnership, or joint venture (*Myra*), then the critical question becomes whether others, such as Flowers' personal representative, will be able to carry out the required duties. To state the matter another way, the question is whether the performance required pertains to matters of skill which another person could not carry out. (Corbin, Contracts §1335 (1952).) We find nothing which would lead us to believe that the statute (Ill. Rev. Stat. 1979, ch. 80, par. 5.1) applies to such relationships in the absence of an express provision. It is useful in this

connection to observe the Iowa statute involved in *Dopheide*. It expressly excludes "croppers" from the protection of the rule of notice. In *Dopheide* the court said:

> "A tenant has an interest in the land and has a right of property in the crop. A cropper has no such interest and works in consideration of receiving a portion of the crop for his labor." (163 N.W.2d 360, 362.)

Thus, a cropper is an employee rather than a tenant.

■■ The bifurcated manner in which the trial court made its order indicates that it was holding Flowers to be a tenant insofar as the corn was concerned, but an employee insofar as the soybeans were concerned. There is nothing to indicate that Flowers and Mehrhoff intended such an arrangement. Elements in the evidentiary record might support either conclusion, but they cannot support both.

The determination of the precise relationship of the parties is of considerable importance. It is common knowledge that today agriculture is far removed from the 40-acres-and-a-mule situation of yesteryear. It is sometimes called "agribusiness," and vast amounts of capital are invested in land, machinery, and improvements; equally vast amounts are spent on fertilizers, seed, herbicides, insecticides, and the like. But the operators and the owners neglect to define their precise relationships and to make provision for such contingencies as here occurred.

The order of the circuit court of Greene County is therefore reversed, and the cause is remanded to that court to take further evidence, if necessary, and to determine the precise relationship of Flowers and Mehrhoff, and having done so, to enter further orders defining the consequences thereof in accordance with the views expressed herein.

Reversed and remanded with directions.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

By statute, tenant farmers in Illinois are entitled to four months' notice of the termination of their leases. The statute provides:

> "In order to terminate tenancies from year to year of farm lands, occupied on a crop share, livestock share, cash rent or other rental basis, the notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting. Such notice may not be waived in a verbal lease." (Ill. Rev. Stat. 1979, ch. 80, par. 5.1.)

Because the statute by its own terms is limited to tenancies and does not apply to other arrangements, the first problem here is determining the capacity in which Flowers farmed the 125 acres. To be sure, not all

persons who raise crops for another or who assist in the cultivation of crops are tenants:

> "It is possible, of course, for a land owner and a farm operator to enter into any type of contract they choose. The contract can create a landlord-tenant relationship, an employer-employee relationship, a partnership or a joint venture." (*United States v. Myra Foundation* (8th Cir. 1967), 382 F.2d 107, 110.)

Whether an agreement has created a landlord-tenant relationship is a factual question whose answer depends upon the parties' intentions. (*Wheeler v. Sanitary District* (1915), 270 Ill. 461, 469-70, 110 N.E. 605, 609.) The evidence in this case is conflicting but points to the existence of a tenancy from year to year, grounded on the division of the crops between the landlord, Mehroff, and the tenant, Flowers.

The agreement was oral. I would not accord much evidentiary weight to Mehroff's denial that a landlord-tenant relationship existed. Mehrhoff also said, however, that Flowers had had possession of the tillable acres, 125 in all, on this particular farm. Mehrhoff himself farmed the land during the first three years of his ownership, 1974-1976, with Flowers helping him somewhat during that time, doing certain tasks on a custom basis. The legal nature of the relationship changed after that, however. Beginning in 1977 Flowers worked the land under a crop-share agreement; the two split the proceeds of the crops evenly. Other aspects of his testimony undercuts the trial court's decision that the arrangement was for personal services and could be fulfilled only by Flowers' efforts. Mehrhoff conceded that the estate had sufficient labor and equipment to complete the agreement for 1980; presumably, then, Flowers had supplied his own machinery, or at least could have supplied his own, in farming Mehrhoff's land. Mehrhoff also agreed that he had frequently seen Mrs. Flowers and several other persons helping Flowers.

Mrs. Flowers' testimony shows the nature of the agreement as well as Mehrhoff's failure to abide by the terms of the statute. According to her testimony the agreement between Flowers and Mehrhoff required Flowers to plant, cultivate, and harvest the crops and haul them to the elevator where the proceeds were divided. Mrs. Flowers, a hired man, a son, and a son-in-law all had helped Flowers. Mrs. Flowers testified that Mehrhoff did not give an advance notice of his intention to terminate the agreement but instead had merely telephoned her several days after her husband's death offering to pay for the work already done if she would agree to terminate the lease. She had refused.

A division of crops between owner and worker does not necessarily create a landlord-tenant relationship. (*Alwood v. Ruckman* (1859), 21 Ill. 200.) Iowa has a statute similar to that of Illinois requiring advanced notice; the Iowa law excludes "croppers" from its protection (Iowa Code

§562.5—.7), who are in effect laborers or hired help. One discussion of this distinction listed the following elements as aids to assessing intent: (1) who lives on the premises, (2) who controls the buildings, (3) who has the right of possession, (4) who furnishes supplies, (5) who divides the crops, (6) the length of the agreement, (7) the extent of the land owner's control over the operation, and (8) the words used in the agreement if written. *Dopheide v. Schoeppner* (Iowa 1968), 163 N.W.2d 360, 362-63.

Although the hearing did not produce a comprehensive report on the nature of the dealings between Flowers and Mehrhoff, the evidence shows that Flowers occupied the land as a tenant, not as an employee. The record clearly shows that Flowers had possession of the farm land, divided the crops, and made the important decisions. The agreement had commenced in 1977 after several years of working under a greatly dissimilar agreement.

As a tenancy, the relationship that existed between Mehrhoff and Flowers was governed by the statute regarding termination of farm leases. The next question is whether the statute requires the landlord to give advance notice following the death of his tenant, or whether that death by itself immediately ends the relationship, denying the estate any continuing interest in the land. The trial court did not refer to the statute and characterized the arrangement as a contract for personal service that ended when Flowers died. Section 5.1 was added in 1961; previously, section 5 required written notice 60 days in advance of terminating a lease, applied to all tenancies from year to year, including leases of farmland. (Ill. Rev. Stat. 1959, ch. 80, par. 5.) Section 5 was interpreted as the exclusive method for terminating a year-to-year tenancy. (*Willhite v. Schurtz* (1920), 294 Ill. 309, 128 N.E. 551; *Anderson v. Dodsworth* (1920), 292 Ill. 335, 127 N.E. 43; *Streit v. Fay* (1907), 230 Ill. 319, 82 N.E. 648.) *Read v. Estate of Mincks* (Iowa 1970), 176 N.W.2d 192, construed Iowa's advance notice provision and held that the statute applies when the tenant dies, therefore continuing the possession of the land in the estate until the landlord has given the required notice of his intent to terminate the lease. *Read* reached this result even though it also held that sharecrop leases are personal service contracts, ordinarily terminated by the death of the party obligated to perform. The statute had been held to be the exclusive method of termination, however, and the court refused to read into it an exception regarding death. I would adopt a similar analysis here for the Illinois statute. I also think this statute applies regardless of the characterization of a sharecrop agreement as a contract for personal service. I therefore would reverse that portion of the trial court's order denying the estate permission to complete the agreement with respect to the approximately 62 acres planted in soybeans.