In re Max Leon HILLIGOSS and Marilyn L. Hilligoss, Debtors.

Bankruptcy No. 285–00768.

United States Bankruptcy Court, C.D. Illinois.

Dec. 29, 1986.

L. Stanton Dotson, Mattoon, Ill., for debtors.

James R. Geekie, Paris, Ill., trustee.

## OPINION

LARRY LESSEN, Chief Judge.

This matter is before the Court on the Trustee's Petition For Instructions. At the time of the filing of his Petition For Relief the Debtor, Max Hilligoss, was a farm tenant on a crop share basis of certain acreage owned by Avey Farms, Inc. The Debtor was also a farm tenant on a cash rent basis of 40 acres owned by L.H. Monke, half of the cash rent having been paid at the time the petition was filed. The issue posed by the Trustee is whether he should proceed to set aside these two landlord's liens upon crops growing at the time the bankruptcy petition was filed, under 11 U.S.C. § 545.

Sections 545(3) and (4) provide as follows:

The Trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(3) is for rent; or

(4) is a lien of distress for rent.

In Illinois, a landlord's lien for rent is a statutory lien. Ill.Rev.Stat. Chap. 110, par. 9–316 (1983). As such, it may be set aside by the Trustee under § 545. *In Re Rogers,* 83–B–01022, Adv. No. 84–A–2146 (Bkrtcy. N.D.Ill.1984). Section 545 was enacted to prevent states from passing statutory lien provisions which would favor certain categories of creditors (such as landlords) in ways inconsistent with the federal bankruptcy distributive scheme. It is a Congressional mandate that landlords will participate as unsecured creditors in bankruptcy, regardless of any state statutory lien. *Id.* at 2. Thus, if Monke and Avey Farms, Inc. have landlords liens upon the crops, these can be set aside by the Trustee.

■ For a landlord's lien upon the crops to arise, the Court must first determine that a landlord-tenant relationship existed between the parties. In the arrangement between the debtor and Monke, the Court finds that such a relationship did exist. The parties entered into a written lease containing words of demise and a description of the property to be leased. The lease gives the debtor-lessee possession of the land, and provides for a payment of cash rent. At the time the debtor filed his petition in bankruptcy, $2,900 cash rent had already been paid, and $2,900 cash rent was still owing to Monke, the lessor. Monke has filed a claim in the bankruptcy proceeding for this $2,900.

■ The Court finds that Monke has a landlord's lien upon the crops that can be set aside by the Trustee under § 545. However, this does not necessarily mean that the Monkes' claim must be relegated to the status of a general, unsecured claim. At the time the debtors filed their Chapter 7 petition, there were growing crops on the premises. The Trustee did not surrender the premises to the landlord, but instead retained possession and made arrangements to harvest the crops, in order to preserve and marshal the assets of the estate. These actions would amount to an assumption of an unexpired lease by the Trustee under the terms of 11 U.S.C. § 365. When a Trustee assumes an unexpired lease, the debtor's estate becomes liable for the full rent accruing under the terms of the lease. *Matter of Braniff Airways, Inc.,* 783 F.2d 1283, 1285 (5th Cir. 1986). Further, the rent provided for in the lease may well be a cost of administration under 11 U.S.C. § 503(b)(1)(A), as an actual, necessary cost and expense of preserving the estate. See 15 *Collier on Bankruptcy,* ¶ 503.04 at 503–20 (15th ed. 1985).

The Monkes should file a request with the Court that their claim for $2,900 be allowed as an administrative expense, so that the matter may be noticed and set for hearing as provided by § 503(b).

■ With regard to the arrangement between the debtor and Avey Farms, Inc., the Court finds that no landlord-tenant relationship existed between the parties. Thus, Avey Farms does not have a landlord's lien upon the crops that can be set aside by the Trustee under § 545. Rather, the Court finds that the arrangement was a sharecropping operation wherein the landowner and the debtor combined their efforts and resources to produce crops.

A sharecropper is an employee rather than a tenant. "A tenant has an interest in the land and has a right of property in the crop. A cropper has no such interest and works in consideration of receiving a portion of the crop for his labor." *Estate of Flowers,* 95 Ill.App.3d 333, 336, 50 Ill.Dec. 899, 901, 420 N.E.2d 216, 218 (1981). Whether a landlord-tenant relationship or a sharecropping arrangement is created is a question of fact.

Illinois has long recognized that crops-hare arrangements do not necessarily create landlord-tenant relationships. The supreme court so stated in the early case of *Alwood v. Ruckman* (1859), 21 Ill. 200, stating that the intention of the parties controls and that the agreement may

create either a landlord-tenant relationship or a tenancy in common in the crop. *Id.* at 334, 50 Ill.Dec. at 901, 420 N.E.2d at 218.

"Where one leases land to another for the purpose of raising a single crop, of which the land owner is to have one part for his rent and the cultivator the remaining part for his pay, the question whether the relation of landlord and tenant exists or the two are tenants in common depends on the intention of the parties, which is usually to be inferred from the circumstances, of which the possession is, in general, determining.

*Wheeler v. Sanitary District,* 270 Ill. 461, 469–470, 110 N.E. 605, 609 (1915), citing *Alwood v. Ruckman,* 21 Ill. 200 (1859).

The following factors form the basis for the Court's conclusion that a sharecropping rather than a landlord-tenant relationship was created by the parties.

1. Nothing in the record indicates that the debtor had exclusive possession of the property. There was never a written lease conveying possession to the debtor, as there was in his relationship with Monke, nor did the debtor live on the premises. Nothing indicates that the debtor had any interest in the land other than participating with the landowner in raising crops.

2. The record further indicates that Avey Farms retained a large degree of control over the land. The landowner made repairs to all buildings, tiles and fencing and directed the debtor regarding rotation of crops, conservation practices, and participation in USDA farm programs.

3. Each paid for one-half of the seed, fertilizers and chemicals with the landowner directing the place of purchase and the quantity to be applied.

4. There was no provision for payment of cash rent. Each party paid one-half of the expenses and was to receive one-half of the crops grown.

5. The crops were divided in the field. The debtor was to be paid for har-

vesting the landowner's one-half of the crop. But, either shortly before or very soon after the filing of the petition, the landowner took possession of all crops growing upon its land, then entered an agreement with the Trustee to gather the crops itself. The landowner delivered the debtor's half of the crops to an elevator in the Trustee's name.

The above factors show that the parties intended to enter a sharecropping arrangement. The case is factually similar to *Busby v. Stimpson,* 542 S.W.2d 551 (Mo.Ct. App.1976). In *Busby* the Court found that an oral arrangement between a landowner and a cultivator which provided the cultivator was to farm the landowner's property in return for one-half of the crop in the field unharvested, with the landowner to pay for half the seed and chemicals and to arrange for harvest of his own half of the crop, created a sharecropping rather than a landlord-tenant relationship.

If the debtor had been a tenant of Avey Farms, title in the entire crop would have been in the debtor, with the landlord having a statutory lien against the crops for payment of rent in the amount of one-half the crop proceeds. But here, the debtor was a sharecropper and from planting through harvest each party had an interest in one-half of the growing crops. The landowner retained possession of and controlled his share throughout the arrangement. The landowner's one-half of the crops was never property of the debtor and thus cannot be reached by the Trustee. Since no landlord-tenant relationship was ever created, there can be no landlord's lien for the Trustee to set aside under § 545. The Trustee already has possession of the debtor's one-half of the crops grown on Avey Farms' property. There are no more crops to which the Trustee is entitled.

For the foregoing reasons, the Trustee should proceed to set aside Monke's landlord's lien upon the debtor's crops grown on the 40 acres leased from Monke. Monke should petition the Court for pay-

ment of the rental provided for in the lease as a cost of administration. Avey Farms has possession of the one-half of the crops it is entitled to under the crop share arrangement with the debtor. There is no landlord's lien upon the crops in Avey Farms' possession for the Trustee to set aside.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered on the 29th day of December, 1986;

IT IS THEREFORE ORDERED with respect to the Trustee's Petition For Instructions that the Trustee proceed to set aside the landlord's lien upon crops grown on the 40 acres leased from L.H. Monke.

IT IS FURTHER ORDERED that the Trustee take no action with respect to the crops in Avey Farms' possession, since there is no landlord's lien upon those crops for the Trustee to set aside.