MARK AMES, Independent Ex'r of the Estate of Whitney D. Ames, Deceased, Plaintiff-Appellant, v. GENEVIEVE B. SAYLER *et al.*, Defendants-Appellees (James B. Sayler *et al.*, Co-Trustees of the Revocable Living Trust of James B. Sayler and Genevieve B. Sayler, *et al.*, Counterclaimants and Third-Party Plaintiffs; Mark Ames, Independent Ex'r of the Estate of Whitney D. Ames, Deceased, *et al.*, Counterdefendants and Third-Party Defendants).

Fourth District    No. 4—94—0315

Argued October 18, 1994.—Opinion filed November 8, 1994.

R. Glen Wright (argued) and Vernon L. Plummer II, both of Plummer & Wright, of Shelbyville, for appellant.

Ralph D. Glenn (argued), of Glenn & Logue, of Mattoon, for appellees.

JUSTICE COOK delivered the opinion of the court:

The question in this case is whether a decedent's estate may continue to farm land which had been farmed by the decedent as a tenant. The trial court held it could not, on these facts. We affirm.

For approximately 20 years prior to his death, Whitney D. Ames (decedent) farmed 77.5 acres of land belonging to defendants, Genevieve Sayler, James Bain, and Donald Bain, pursuant to an oral lease. Under the lease the crop was divided equally between decedent and defendants. Decedent furnished all machinery and labor, and the costs of seed and fertilizer were divided equally. For the last few years most of the farm work was in fact done by Rick Copeland, whom decedent hired at his own expense. One year in the early 1980's, while decedent was ill, decedent's son, plaintiff Mark Ames, had farmed the tract for him. (Plaintiff is regularly employed by Caterpillar, Inc., as an accountant.) Defendants were unaware that anyone other than decedent had done any work on their farm.

In December 1992, Copeland did some plowing on the property, and decedent bought some seed corn and seed beans. A few days after

decedent's death on January 19, 1993, plaintiff had some conflicting telephone conversations with defendants, but was finally told not to farm the property. Plaintiff was told the estate would be reimbursed for its 1993 season expenses to date. Plaintiff, in turn, filed this lawsuit on March 12, 1993. Defendants signed a lease for the 1993 season with John Keller on March 13. Nevertheless, on or about May 10, Copeland began readying the ground to plant the corn. He was interrupted by Keller, who called the sheriff. On May 10 or 11, Keller prevented Miller Farm Service (Miller) from applying fertilizer. Copeland applied the fertilizer himself and planted the corn, with plaintiff's help, on May 13. At Copeland's direction, Miller then applied the bean chemicals, and Copeland planted the beans. Copeland cultivated the crop and sprayed for weeds, as he had always done. Defendants filed a counterclaim and a third-party complaint against Copeland on May 11, 1993. Defendants Genevieve and James Sayler testified they did not know prior to trial this lawsuit concerned only the right to farm the land for the 1993 season.

■ Where the existence of a particular person is necessary for the performance of a contract duty, it is a "basic assumption on which the contract was made" that he will neither die nor be deprived of the necessary capacity to perform the duty prior to the time of performance. Therefore, the death of that person or his loss of capacity discharges the obligor's duty to render the performance. (Restatement (Second) of Contracts § 262, at 324-25 (1981); *Martin Emerich Outfitting Co. v. Siegel, Cooper & Co.* (1908), 237 Ill. 610, 616, 86 N.E. 1104, 1105, citing *Smith v. Estate of Preston* (1897), 170 Ill. 179, 184-85, 48 N.E. 688, 690.) Such an arrangement is generally referred to as a personal services contract, and is not assignable, and does not survive, without the consent of both parties. See *Liddle v. Salem School District No. 600* (1993), 249 Ill. App. 3d 768, 772, 619 N.E.2d 530, 532-33, citing *Pfiester v. Western Union Telegraph Co.* (1917), 282 Ill. 69, 118 N.E. 407 (offer to play baseball not assignable).

In *In re Estate of Flowers* (1981), 95 Ill. App. 3d 333, 420 N.E.2d 216, this court considered the result when one who was farming land for another died. *Flowers* held there were two possibilities: (1) the relationship might be one of landlord-tenant, in which event the tenancy could only be terminated by the statutory four months' notice prior to the end of the term (735 ILCS 5/9—206 (West 1992)); or (2) the relationship might be a contract for personal services, which would terminate on the death of the one farming the land. (*Flowers*, 95 Ill. App. 3d at 334, 420 N.E.2d at 217.) The only question considered by the *Flowers* court was whether there was a tenancy, and the case was reversed and remanded for further evidence on that issue. *Flowers*, 95 Ill. App. 3d at 336, 420 N.E.2d at 219.

■ Farm tenancies generally run from March 1 of one year to February 28 of the next. The four-month statute referred to in *Flowers* is as follows:

> "Notice to terminate tenancy of farm land. In order to terminate tenancies from year to year of farm lands, occupied on a crop share, livestock share, cash rent or other rental basis, the notice to quit shall be given in writing not less than 4 months prior to the end of the year of letting. Such notice may not be waived in a verbal lease." 735 ILCS 5/9—206 (West 1992).

Not everyone who farms land for another is a tenant. Some such farmers may be employees, others may simply be hired to do custom work. There are infinite varieties of farm relationships, varying for the most part by the degree of possession and control given up by the farm owner. At some point over that spectrum the worker has so little possession of the real estate or control of the farming operation that he is not considered a tenant. Nontenants need not be given the statutory four-month' notice before their services are terminated. *Flowers* indicated, however, the rules may be more technical than that, that even "crop-share arrangements do not necessarily create landlord-tenant relationships." (*Flowers*, 95 Ill. App. 3d at 334, 420 N.E.2d at 218.) (The four-month statute specifically covers tenancies on a "crop share" basis.) The four-month statute is beneficial for both landlords and tenants, because it provides stability. It is unfortunate that *Flowers* has created uncertainty in application of the four-month statute, which was meant to be broadly applied. See *In re Hilligoss* (7th Cir. 1988), 849 F.2d 280, 282, citing Grossman & Fischer, *The Farm Lease in Bankruptcy: A Comprehensive Analysis*, 59 Notre Dame L. Rev. 598, 605 (1984) (criticizing *Flowers* as creating confusion by encouraging courts to give different interpretations to essentially identical contracts).

In any event we reject the view that the question presented in this case is answered (or even addressed) by the four-month statute, or by considering whether plaintiff was a tenant. The four-month statute deals with termination at the end of the year, not termination upon the death of one of the parties. We recognize that a farm tenancy is an estate in land, but it is more than that. A farm tenant not only has possession of land, he is expected to perform services which require skill and judgment. A farm landlord usually does not view tenants as interchangeable, and usually chooses to lease his farm only to those in whom he has particular confidence. No satisfactory reason appears why a farm owner should be forced to accept a substitute, if the farm owner can be said to have entered into a "tenancy," but not if what is basically the same relationship is

labeled a personal services contract. Farm tenancies and personal services contracts are not mutually exclusive categories. Farm tenancies in fact are more readily viewed as personal services contracts than are employee or custom hire relationships. A farm owner places more trust in a tenant than he does in an employee or a custom hire operator. The question in this case should be answered by determining whether the contract between the farm owner and the worker is a personal services contract, not whether the farm worker is considered a tenant as opposed to a custom hire contractor.

The trial court in this case first stated the rule as it had been announced in *Flowers*:

> "[The court] was required to determine whether a landlord/tenant farm tenancy was in fact a landlord/tenant relationship that would fall under the provisions of the Illinois statute and the notice requirement set forth in the statute *or* whether it was a personal service contract that was terminable upon death of the tenant farmer." (Emphasis added.)

Unlike *Flowers*, however, the trial court began by considering whether a personal services contract existed, perhaps reasoning that if there was a personal services contract there could not be a landlord-tenant relationship. The trial court found that although decedent had not done all the work himself—much of the work had been done by Copeland, and some by plaintiff—defendants did not know about that. Decedent had farmed the property for a substantial period of time, and defendants had relied heavily on his advice. Accordingly, the trial court held that a personal services contract existed between the parties, which came to an end with the death of decedent. The trial court entered judgment for defendants, and placed Keller in possession, but directed all proceeds be held in escrow until the fair value of decedent's and Copeland's labor. and expenses were reimbursed. The parties stipulated to a value of $4,600.60. Defendants paid that amount to plaintiff, the court ordered the balance released, and this appeal followed.

■ We first address a preliminary matter. Defendants argue the appeal should be dismissed, as a litigant cannot attack a decree after enjoying its benefits, when if the judgment were reversed on appeal the opposing party would be at a disadvantage. We reject that argument here. Plaintiff is entitled to the $4,600.60 in any event, and the only dispute on this appeal is whether he should receive a higher amount. Defendants will not be disadvantaged by their payment of $4,600.60, in the event we should reverse. *Gold v. Rader* (1990), 201 Ill. App. 3d 775, 781, 559 N.E.2d 210, 213-14.

On appeal plaintiff focuses on the question whether there was a

tenancy. He argues that defendants admitted in the pleadings that a landlord-tenant relationship existed, and on that basis, under *Flowers*, he should have been entitled to judgment on the pleadings. Plaintiff argues the trial court necessarily found that there was no landlord-tenant relationship and that finding is error in light of the facts of this case and defendants' admission. We do not question there was a landlord-tenant relationship in this case and that the four-month notice statute would apply in the event an attempt had been made to terminate this lease at the end of the year. As we have explained above, however, that is not relevant on this appeal. What is important is whether the parties entered into this contract upon the understanding that it would be performed by decedent and no others. The trial court made that finding, that this contract was a personal services contract, and that finding is supported by the evidence.

■ We believe that deciding these cases on the basis whether a personal services contract existed will generally provide a fair result. Where the work is known to have been done by several individuals, and it cannot be said that the survival of any one of them is essential to the contract, the survivors will be allowed to complete it. In this case, the estate wants to complete the contract, and that will generally be so where a family is involved in tenant farming. We should remember, however, that the rule cuts both ways. In cases where the decedent is the only farmer in the family, forcing the estate to complete the contract may impose a real burden. Inquiring whether a personal services contract exists will provide a fair solution in both situations. At any rate, the parties may resolve this question for themselves by their lease agreement. We note the various sample forms of lease prepared by the University of Illinois' College of Agriculture, Department of Agricultural Economics, Cooperative Extension Service, contain this provision: "The terms of this lease shall be binding on the heirs, executors, administrators, and assigns of both Lessor and Lessee in like manner as upon the original parties."

For the foregoing reasons, the judgment of the circuit court of Coles County is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.